# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

ARMBRUST INTERNATIONAL, LTD.
and ERWIN PEARL, INC.,
Plaintiffs,

v.

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA and ST. PAUL FIRE AND MARINE INSURANCE COMPANY,
Defendants.

C.A. No. 04-212 ML

## ARMBRUST INTERNATIONAL LTD. AND ERWIN PEARL, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Now come Plaintiffs Armbrust International, Ltd. and Erwin Pearl, Inc., through counsel, and move for partial summary judgment against Defendants Travelers Casualty and Surety Company of America and St. Paul Fire and Marine Insurance Company, on Counts I and III of the Complaint. In support of their Motion Plaintiffs rely upon the accompanying Memorandum of Law.

ARMBRUST INTERNATIONAL, LTD.
and ERWIN PEARL, INC.

By Their Attorneys,

PARTRIDGE SNOW & HAHN LLP

Steven E. Snow (#1774)
Robert K. Taylor (#6514)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

DATED: August 12, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing ARMBRUST INTERNATIONAL, LTD. AND ERWIN PEARL, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT was mailed, postage prepaid, on this 12th day of August, 2005 to:

Anthony R. Zelle, Esq.
DENNER O'MALLEY, LLP
Four Longfellow Place
35th Floor
Boston, MA 02114

Mark E. Cohen, Esq.
Robert J. Maselek, Jr.
McCORMACK & EPSTEIN
One International Place
7th Floor
Boston, MA 02110

Stephen H. Burke, Esq.
RATCLIFFE, BURKE, HARTEN & ELLIS LLP
1600 Financial Plaza
Providence, RI 02903

John J. Flanagan, Esq.
2348 Post Road
Warwick, RI 02886

812774_1/3119-3

15 1:05

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ARMBRUST INTERNATIONAL, LTD.<br>and ERWIN PEARL, INC.,<br>Plaintiffs,<br><br>v.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA and ST. PAUL FIRE AND MARINE INSURANCE COMPANY,<br>Defendants. | C.A. No. 04-212 ML |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs Erwin Pearl, Inc. ("Erwin Pearl") and Armbrust International, Ltd. ("Armbrust") submit the following memorandum in support of their motion for partial summary judgment on Counts I (Breach of Insurance Contract) and III (Declaratory Judgment) of the Complaint.

## I. INTRODUCTION.

This is a dispute over coverage for property loss arising out of an embezzlement of money. The Defendants are sister companies, commonly owned by The St. Paul Travelers Companies. After being notified of Plaintiffs' property loss in May 2003, Travelers Casualty & Surety Company of America ("Travelers") denied Plaintiffs' claim and St. Paul Fire & Marine Insurance Company ("St. Paul") paid what it claimed was the policy limit on its insurance policy with Plaintiffs. In doing so, Defendants relied on diametrically opposing interpretations of Rhode Island law.

Plaintiffs are entitled to summary judgment against Travelers because under Rhode Island law, their embezzlement loss occurred during the policy period of a Travelers

insurance policy that covered employee dishonesty. Based upon the Rhode Island Supreme Court's determination of when a property loss occurs for purposes of triggering coverage, there is no question that Travelers has full liability for the loss, subject to a $25,000 retention. In *CPC International, Inc. v. Northbrook Excess & Surplus Insurance Co.*, 668 A.2d 647 (R.I. 1995), the Rhode Island Supreme Court responded to a certified question from the United States Court of Appeals for the First Circuit by concluding that coverage was triggered by an "occurrence that takes place when property damage, which includes property loss, manifests itself or is discovered or in the exercise of reasonable diligence, is discoverable." St. Paul, Travelers' sister company, relied on *CPC International* in its coverage determination limiting Plaintiffs' recovery under their St. Paul policy to $25,000.

Even if the Plaintiffs' embezzlement loss did not occur during the policy period of the Travelers policy, Plaintiffs are still entitled to summary judgment against Travelers because their loss triggered the Prior Insurance clause of the Travelers policy, which provides an independent basis for coverage. The Prior Insurance clause in general terms establishes coverage for a loss sustained during the period of any prior insurance, provided that the insured could have recovered under prior insurance except that the time within which to discover loss had expired. Plaintiffs' loss would have been covered up to $500,000 under a policy issued by St. Paul, except that the time to discover a loss triggering that coverage amount had expired. On the undisputed facts of this case, the conditions for coverage under the Prior Insurance clause have been met.

## II. BACKGROUND FACTS AND TRAVEL.

The relevant facts are set forth in Plaintiffs' Rule 12.1 Statement of Material Facts Not In Dispute ("Undisputed Facts" or "UF").

## III. ARGUMENT.

### A. Summary Judgment Standards

A party seeking summary judgment must show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, the Court must view the facts on the record and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Cont'l Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Although the Court must examine the record in the light most favorable to the non-moving party, defeating a properly documented motion for summary judgment requires more than the "jingoistic brandishing of a cardboard sword." *Int'l Ass'n of Machinists v. Winship Green Nursing Ctr.*, 103 F.3d 196, 199-200 (1st Cir. 1996).

Initially, the burden in a summary judgment motion requires the moving party to aver "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets this burden, the onus falls upon the non-moving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) ("a genuine issue exists if there is sufficient evidence supporting this claimed factual dispute to require a choice between the parties' differing versions of the truth at trial."). To oppose the motion successfully, the non-moving party "may not rest upon mere allegation or denials of his pleading." *Anderson*, 477 U.S. at 256. The non-moving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the non-moving party." *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993). Moreover, the evidence presented by the non-moving party "cannot be conjectural or problematic; must have substance in the sense that it

limns differing versions of the truth which a fact finder must resolve at an ensuing trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991).

### B. Standards For Interpreting Insurance Policies.

It is well settled in Rhode Island that a court "applies the rules for construction of contracts when interpreting an insurance policy." *Sjogren v. Metropolitan Property and Casualty Ins. Co.*, 703 A.2d 608, 610 (R.I. 1997); *see also Mallane v. Holyoke Mutual Ins. Co. in Salem*, 658 A.2d 18, 19-20 (R.I. 1995). The language of an insurance policy must be viewed in its entirety, and given its "plain, ordinary and usual meaning." *Amica Mutual Ins. Co. v. Streicker*, 583 A.2d 550, 552 (R.I. 1990); *see also Bartlett v. Amica Mutual Ins. Co.*, 593 A.2d 45, 48 (R.I. 1991) ("the language of insurance policies is to be interpreted in accordance with the way it would be understood by the average man, rather than in a technical sense."). When an insurance policy is "ambiguous or capable of more than one reasonable meaning, the contract will be strictly construed in favor of the insured and against the insurer." *Bartlett*, 593 A.2d at 47. "Ambiguous exclusionary clauses, particularly, should be construed in the manner most favorable to the insured." *Id.* at 48.

### C. The Loss Is A Type Of Loss Covered Under The Travelers Policy.

Plaintiffs obtained excess Employee Dishonesty coverage from Travelers under Policy No. 103287494, covering the period February 25, 2003 through March 12, 2004 ("the Travelers 2003-2004 Policy"). UF No. 43-48. Insuring Agreement A of this policy covered losses from employee dishonesty, defined as "direct loss of, and direct loss from damage to, money, securities and other property resulting from employee theft." UF No. 48. It is undisputed that Plaintiffs' embezzlement loss is a type of loss covered by the Travelers 2003-2004 Policy because it is a direct loss of money resulting from employee theft.

The embezzlement began in May 2000. UF No. 55. Notwithstanding the diligence of Erwin Pearl, including the retention of outside auditors to conduct annual audits, the loss was not discovered until May 2003. UF No. 56. Only a relatively small amount of the stolen funds were embezzled while the Travelers' 2003-2004 Policy was in effect. UF No. 61. While Travelers contends that only this portion of the total loss is covered under its policy, in fact there is coverage for the entire loss.

### D. <u>The Entire Loss Is Covered Under The Travelers Policy Because It Occurred During The Policy Period.</u>

The Travelers 2003-2004 Policy covers loss from employee dishonesty "which occurs during the policy period," as follows:

> Subject to Section V.B. below, this Coverage Part applies to loss which occurs during the policy period. Loss is covered under this Coverage Part only if discovered no later than 120 days following termination or cancellation of the Insuring Agreement or termination of this Coverage Part as to an Insured, except for loss under Insuring Agreement G, which provides for an automatic 12 month discovery period. At any time prior to the termination of this Coverage Part in its entirety, the Insured may give written notice to the company requesting an extension of the discovery period for loss under this Coverage Part to 12 months and shall pay an additional premium.

Travelers 2003-2004 Policy, Section IV. Under Rhode Island law, a property loss "occurs" for purposes of triggering insurance coverage when the loss "manifests itself or is discovered or in the exercise of reasonable diligence is discoverable." *CPC International, Inc. v. Northbrook Excess & Surplus Insurance Co.*, 668 A.2d 647, 650 (R.I. 1995); *see also Textron, Inc. v. Aetna Casualty & Surety Company,* 754 A.2d 742, 746 (R.I. 2000) (discoverability in the exercise of

reasonable diligence was applicable as the occurrence trigger).[1] It is undisputed that Plaintiffs' loss manifested itself in May 2003, during the policy period of the Travelers 2003-2004 Policy, and that Plaintiffs promptly terminated the responsible employee and put their insurance carriers on notice. UF No. 56-57. Thus, under the ordinary meaning of the applicable policy language, Plaintiffs' loss of money from the embezzlement is covered under the Travelers 2003-2004 Policy.

Travelers' coverage position that Plaintiffs' loss is not a property loss governed by the Rhode Island Supreme Court's ruling in *CPC International* is directly contradicted by the policy language. Insuring Agreement A of the Travelers 2003-2004 Policy states that a covered employee dishonesty loss is a "direct loss of . . . money, securities and other property resulting from employee theft." (Emphasis added). Travelers' use of the words "and other property" after the word "money" in Insuring Agreement A conclusively demonstrates that a loss of money from employee dishonesty is a property loss. Accordingly, Plaintiffs' embezzlement loss is a property loss that under *CPC International* occurred when it manifested itself.

Travelers' coverage position is particularly startling when contrasted with the position taken by its sister company, Defendant St. Paul. St. Paul applied *CPC International* to arrive at its determination that Plaintiffs' embezzlement loss occurred at the time it was

---

[1] In *CPC International*, the United States Court of Appeals for the First Circuit certified the following question to the Rhode Island Supreme Court:

> What trigger-of-coverage standard would the Rhode Island Supreme Court use for determining at what point an 'occurrence' causing 'property damage' took place, within the meaning of the insurance policy provisions provided in the separate opinion in this case, where an insured alleges that a spill of hazardous contaminants in 1974 migrated through the ground water, causing immediate injury to the pertinent property, which was not, in fact, discovered, however, until at least 1979?

668 A.2d at 647. Responding to the question, the Rhode Island Supreme Court concluded that coverage was triggered by an "occurrence that takes place when property damage, which includes property loss, manifests itself or is discovered or in the exercise of reasonable diligence is discoverable." 668 A.2d at 650.

discovered, and that therefore St. Paul's limit of liability is $25,000. In response to Plaintiffs' proof of loss, St. Paul's wrote:

> In Rhode Island a claim for property damage is covered under the policy that is in effect when the damage manifests itself, is discovered or, in the exercise of reasonable diligence is discoverable. Unlike the typical property insurance situation, where the discovery and manifestation of the damage coincides with the time the damage occurred, the theft by Ms. Gardner was undetected over the course of three years during which it took place. The theft, which began before The St. Paul first provided coverage to Erwin Pearl, was discovered in May of 2003 and, therefore, there is coverage for the loss only under The St. Paul policy that was in effect in May 2003.

March 24, 2004 letter to Erwin Pearl from Ronald G. Mund, on behalf of St. Paul (Exhibit A to Complaint). The relevant language of the St. Paul 2002-2003 Policy is almost identical to the relevant language of the Travelers 2003-2004 Policy. Under Employee Theft, the St. Paul 2002-2003 Policy provides that the company "will pay for loss or damage to money, securities or other property resulting directly from theft by any of your employees." UF No. 29. As noted above, Insuring Agreement A of the Travelers 2003-2004 Policy covers "direct loss of, and direct loss from damage to, money, securities and other property resulting from employee theft." UF No. 48. There is no material difference between these policy provisions. There is also no difference in the triggering event for coverage.

Travelers' argument that there is a material difference between the employee dishonesty coverages in the applicable Travelers and St. Paul policies borders on the frivolous. The Travelers agent who secured the employee dishonesty coverage for Plaintiffs testified during depositions that he believed that the coverages were essentially equivalent, written on an occurrence basis. UF No. 44. Plaintiffs were never advised that there was any material difference in the coverages. *Id.* In light of its agent's belief that the policies were essentially equivalent, Travelers should be estopped from asserting otherwise.

**E. Plaintiffs' Property Loss Is Covered Under The Prior Insurance Provision Of The Travelers Policy.**

Even if Plaintiffs' embezzlement loss were not covered outright under the employee dishonesty coverage of the Travelers 2003-2004 Policy, it would be covered under the Loss Sustained During Prior Insurance ("Prior Insurance") clause. Section V.B. of the Travelers 2003-2004 policy, entitled Loss Sustained During Prior Insurance, provides:

> 1. If the Insured or a predecessor in interest sustained loss during the period of any prior insurance that it or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, the Company will pay for it under this Coverage Part, provided
>
> a. This Coverage Part became effective at the time of cancellation or termination of the prior insurance; and
>
> b. The loss would have been covered by this Coverage Part had it been in effect when the act or events causing the loss were committed or occurred.

UF No. 50. It is undisputed that the embezzlement took place between May 2000 and May 2003. From October 20, 2001 until the time that the Travelers 2003-2004 Policy became effective, Plaintiffs had $500,000 of employee dishonesty coverage from St. Paul. Plaintiffs could have recovered a substantial portion of their embezzlement loss under the St. Paul policy except that by May 2003, when the loss manifested itself, the time within which to discover an occurrence triggering the $500,000 limit had expired. Thus, there is coverage under the Travelers 2003-2004 Policy regardless of whether the Rhode Island Supreme Court's ruling in *CPC International* applies.

The St. Paul policy issued to Plaintiffs for the policy period October 20, 2001 through October 20, 2002 (the "St. Paul 2001-2002 Policy") insured against a variety of losses, including employee dishonesty. The employee dishonesty policy limit under the St. Paul 2001-2002 Policy was $500,000, with a $5,000 deductible. UF No. 11. In December 2002, St. Paul renewed Plaintiffs' coverage, with certain modifications, for the period October 20, 2002

through October 20, 2003 (the "St. Paul 2002-2003 Policy"). UF No. 26. Although the renewal proposal included a limit for employee dishonesty coverage of $25,000, St. Paul and its agent, the Preston Agency, continued to discuss the terms of the renewal after the proposal was issued. UF No. 24. When St. Paul issued the renewal policy, Form 0173, revised 7-01, stated that the policy limit for employee dishonesty was $500,000. UF No. 28.

In January 2003, St. Paul indicated to its agent that it was willing to continue offering Plaintiffs a $500,000 employee dishonesty limit, with a sub-limit of $25,000 for precious metals. UF No. 31. This was consistent with what the Preston Agency had asked for the previous November. UF No. 20. In February 2003, St. Paul changed positions and indicated that it would only offer a $250,000 limit. UF No. 35. Plaintiffs were told by the Preston Agency that St. Paul now did not wish to write more than $250,000 of employee dishonesty, but that Plaintiffs were covered up to $500,000 in the interim until replacement coverage could be placed. UF No. 37.[2]

The Preston Agency solicited quotes from both St. Paul and Travelers, and found that Travelers was willing to add $500,000 in employee dishonesty coverage with a $25,000

---

[2] As a matter of Rhode Island law, Plaintiffs were covered up to $500,000 in the interim until replacement coverage could be found due to St. Paul's failure to give notice of a change of policy limits as required by R.I. Department of Business Regulation Insurance Regulation 38, and R.I. Gen. Laws § 42-35-3(a). UF No. 17, 32. Insurance Regulation 38 provides in pertinent part:

> An insurer shall provide to the first-named insured at the mailing address shown on the policy, or to the agent of record, written notice of premium increase, change in deductible, reduction in limits or coverage at least thirty (30) days prior to the expiration date of the policy, in the case of notice to the insured or forty-five (45) days in the case of notice to the agent of record. If the insurer fails to provide such notice, the coverage provided to the named insured shall remain in effect until notice is provided or until the effective date of replacement coverage obtained by the named insured, whichever first occurs. For the purposes of this Regulation, notice is considered given thirty (30) days following date of giving of the notice. If the named insured elects not to renew, any earned premium for the period of extension of the terminated policy shall be calculated pro rata at the lower of the current or previous year's rate. If the insured accepts the renewal, the premium increase, if any, and other changes shall be effective the day following the prior policy's expiration of anniversary date.

deductible to Plaintiffs' existing Travelers policy for less than St. Paul would charge. UF No. 43. Plaintiffs decided to reduce employee dishonesty coverage with St. Paul to $25,000 and place the excess with Travelers. UF No. 47. Travelers bound $500,000 in coverage with a $25,000 deductible effective February 25, 2003. UF No. 45. St. Paul purported to change the employee dishonesty policy limit in the St. Paul 2002-2003 Policy from $500,000 to $25,000 by way of Endorsement No. 003, dated April 18, 2003 and effective February 10, 2003. UF No. 52.[3]

Thus, as required by the Prior Insurance clause, the Plaintiffs' $500,000 employee dishonesty coverage under the Travelers 2003-2004 Policy became effective at the time of the termination of Plaintiffs' $500,000 employee dishonesty coverage under the St. Paul 2002-2003 Policy. Furthermore, Plaintiffs sustained loss during the period of the St. Paul insurance, and could have recovered a substantial portion of their embezzlement loss under the St. Paul policy except that the time within which to discover an occurrence triggering the $500,000 limit had expired by the time Plaintiffs learned of the loss. "Absent a clear agreement to the contrary, an insured who purchases replacement employee fidelity coverage that appears to be identical to the prior coverage should be entitled to coverage that is in fact identical." *Home Savings and Loan v. The Aetna Casualty and Surety Co.*, 817 P.2d 341, 352 (Utah 1991); *see also* 11 Lee R. Russ and Thomas F. Segalla, *Couch on Insurance 3d* § 160:83 (1998) ("A bond which follows an earlier bond may expressly provide for coverage of prior losses as by stating that there is coverage for losses during the period of the prior bond if they would have been recoverable thereunder had it continued in force."). Because Plaintiffs purchased employee dishonesty

---

[3] A year later, after Plaintiffs filed their embezzlement claim, St. Paul issued Endorsement No. 006 dated March 1, 2004. Endorsement No. 006 purported to change the effective date of Endorsement No. 003 from February 10, 2003 to October 20, 2002. Endorsement No. 006 also purported to reduce the additional benefit for computer coverage from $500,000 to $25,000 and change the limits on property in transit, all without any return of premium. UF No. 59.

coverage from Travelers to maintain the $500,000 limit they initially secured through St. Paul's, the Travelers Prior Insurance clause applies.

## IV. CONCLUSION

For all of the foregoing reasons, partial summary judgment should be granted in favor of Plaintiffs on Counts I and III of the Complaint.

ARMBRUST INTERNATIONAL, LTD.
and ERWIN PEARL, INC.

By Their Attorneys,

PARTRIDGE SNOW & HAHN LLP

Steven E. Snow (#1774)
Robert K. Taylor (#6514)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

DATED: August 12, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing PLAINTIFFS' MEMORANDUM IN OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT was mailed, postage prepaid, on this 12th day of August, 2005 to:

Anthony R. Zelle, Esq.
DENNER O'MALLEY, LLP
Four Longfellow Place
35th Floor
Boston, MA 02114

Mark E. Cohen, Esq.
Robert J. Maselek, Jr.
McCORMACK & EPSTEIN
One International Place
7th Floor
Boston, MA 02110

Stephen H. Burke, Esq.
RATCLIFFE, BURKE, HARTEN & ELLIS LLP
1600 Financial Plaza
Providence, RI 02903

John J. Flanagan, Esq.
2348 Post Road
Warwick, RI 02886

811714_1/3119-3