# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

ARMBRUST INTERNATIONAL, LTD.
AND
ERWIN PEARL, INC.,
Plaintiffs

*v.*

TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA
AND
ST. PAUL FIRE & MARINE INSURANCE COMPANY,
Defendants

CIVIL ACTION NO.:

CA 04 212 ML

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA

The Defendant, Travelers Casualty & Surety Company of America ("Travelers"), through counsel, moves for summary judgment against Plaintiffs, Armbrust International, Ltd. and Erwin Pearl, Inc., as to all Counts of the Plaintiffs' Complaint against Travelers. In support of Travelers' Motion for Summary Judgment, Travelers' relies on the Memorandum of Law and Rule 12.1 Statement of Undisputed Material Facts filed herewith.

Dated: 9/15/05

Respectfully submitted,
**Travelers Casualty & Surety Company of America**, Defendant,

By: ______________________
John J. Flanagan [RI Bar #3099]
2348 Post Road
Warwick, RI 02886
(401) 732-4480/(508) 541-6050 (fax)

**CO-COUNSEL:**

______________________
Mark E. Cohen, Esq. [MA BBO # 089800]
Robert J. Maselek, Jr. [MA BBO#564690]
**The McCormack Firm, LLC**
One International Place - 7th Floor
Boston, MA 02110
Tel: (617) 951-2929
Fax: (617) 951-2672

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Motion for Summary Judgment of Defendant, Travelers Casualty & Surety Company of America*, was served upon all counsel of record, this 15th day of September, 2005, by mailing a copy hereof, addressed to:

Robert K. Taylor, Esq.
**Partridge Snow & Hahn LLP**
180 South Main Street
Providence, RI 02903-7120

Stephen H. Burke, Esq
**Ratcliffe Burke Harten & Elias, LLP**
1600 Financial Plaza
Providence, RI 02903

Anthony R. Zelle
**Denner O'Malley LLP**
Four Longfellow Place, 35th Floor
Boston, MA 02114

Robert J. Maselek, Jr.

#77058v1<MEBOS> -Erwin Pearl v Travelers - MSJ

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ARMBRUST INTERNATIONAL, LTD.<br>AND<br>ERWIN PEARL, INC.,<br>Plaintiffs<br>*v.*<br>TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA<br>AND<br>ST. PAUL FIRE & MARINE INSURANCE COMPANY,<br>Defendants | CIVIL ACTION NO.:<br>CA 04 212 ML |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA

## I. INTRODUCTION

The Defendant, Travelers Casualty & Surety Company of America ("Travelers"), submits this Memorandum of Law in support of its Motion for Summary Judgment as to all Counts of the Complaint of Plaintiffs, Armbrust International, Ltd. and Erwin Pearl, Inc. (collectively "Erwin Pearl").

This case involves a relatively straight-forward insurance coverage matter. The basic facts are not in dispute. An employee of Erwin Pearl, Michelle Kyles Gardner, embezzled approximately $323,203 from Erwin Pearl between May 2000 and May 2003 (Plaintiffs' Rule 12.1 Statement of Material Facts Not in Dispute, ¶¶ 55-57). Of this amount, far less than $25,000 was actually embezzled while the Travelers policy at issue was in effect (Travelers' Rule 12.1 Statement of Material Facts Not in Dispute, ¶¶ 3-4).

Travelers issued a Wrap policy to Erwin Pearl for the period March 12, 2002 to March 12, 2003 (Travelers' Rule 12.1 Statement of Material Facts Not in Dispute, ¶ 5). The 2002-2003 Wrap policy originally only included third party coverage for employment practices liability, directors & officers, and fiduciary liability. (Id.) At Erwin Pearl's request, and for no charge, Travelers added first party fidelity (crime) coverage to the 2002-2003 Wrap policy effective February 25, 2003 (Plaintiffs' Rule 12.1 Statement of Material Facts Not in Dispute, ¶ 45). The Wrap policy's fidelity coverage includes coverage for employee dishonesty losses (Plaintiffs' Rule 12.1 Statement of Material Facts, ¶ 48, and Exhibit B thereto). Travelers renewed the Wrap policy, including the fidelity coverage added in February 2003, for the policy period March 12, 2003 to March 12, 2004 (Id.). The retention amount applicable to the employee theft coverage is $25,000 (Id.). Pursuant to the discovery portion of the fidelity section of the Travelers Wrap policy, the employee theft coverage only applies, "to loss which occurs during the policy period." (Id.). Pursuant to well-established law concerning fidelity policies which incorporate this policy language, ***the Travelers policy only applies to amounts that were actually embezzled during the policy period***. Amounts embezzled before the Travelers policy period are not covered, even if the embezzlement was not discovered until during the Travelers policy period, unless the Loss Sustained During Prior Insurance provision applies, which it clearly does not in this case.

In February 2004, Travelers orally informed Erwin Pearl that since the portion of the loss that occurred during the policy period was less than the policy's $25,000 retention amount, Travelers had no duty to indemnify Erwin Pearl against the loss (Travelers' Rule 12.1 Statement of Material Facts Not in Dispute, ¶ 9). On March 23, 2004, Travelers gave Erwin Pearl formal written notice that it did not have a duty to indemnify Erwin Pearl for the embezzlement loss (Plaintiffs' Rule 12.1

Statement of Material Facts Not in Dispute, ¶ 61). It is Erwin Pearl's position that coverage under the employee dishonesty section of the 2003-2004 Travelers Wrap CSL policy was triggered when Erwin Pearl discovered the loss (which occurred in May 2003, during the Travelers policy period), rather than when the embezzlement occurred (almost entirely before the Travelers policy period).

Count I asserts a breach of insurance contract cause of action. In Count I, Erwin Pearl alleges that: (a) it suffered a direct loss of money resulting from employee theft and/or employee dishonesty; (b) it made a timely claim under the Travelers policy; and (c) Travelers has refused to pay the claim. In Count II, Erwin Pearl contends that Travelers acted in bad faith by denying the claim and in its "inordinate delay (September 9, 2003 through May 14, 2004) in investigating the claim." In Count III, Erwin Pearl seeks a declaratory judgment that the Travelers' policy covers its losses from the Gardner embezzlement.

Travelers is now moving for summary judgment as to all Counts of the Complaint. For all of the reasons set forth in this Memorandum of Law, Erwin Pearl has failed, as a matter of law, to establish that Travelers has a duty to indemnify it for the losses it suffered due to Garner's embezzlement. Therefore, Erwin Pearl's failure to adduce sufficient evidence on issues essential to its case and on which it bears the burden of proof, establishes that there are no genuine issues of material fact and Travelers is entitled to judgment as a matter of law.

## II. THE RELEVANT PROVISIONS OF THE TRAVELERS POLICY

The Insuring Agreement in the fidelity coverage part of the Travelers policy provides that:

> Subject to the Wrap Declarations, the Fidelity Coverage Part Declarations, the Common Terms and Conditions, this **Coverage Part** and other terms hereof, the Company agrees to indemnify the **Insured** for:

A. EMPLOYEE DISHONESTY

Direct Loss of, and direct loss from damages to, **Money**, **Securities** and other property resulting from **Employee Theft**.

Pursuant to the discovery section of the policy, however, "[s]ubject to Section V.B. below, this **Coverage Part** applies to loss which occurs during the **Policy Period**. . . ." Section V.B. of the fidelity section of the Wrap policy, the Loss Sustained During Prior Insurance provision, provides that:

1. If the **Insured** or a predecessor in interest sustained loss during the period of any prior insurance that it or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, the Company will pay for it under this **Coverage Part**, provided:

   a. this **Coverage Part** became effective at the time of cancellation or termination of the prior insurance; and

   b. the loss would have been covered by this **Coverage Part** had it been in effect when the acts or events causing the loss were committed or occurred.

## III. ARGUMENT

### A. Standard for Summary Judgment

Summary Judgment is proper where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Tanya Creations, Inc. v. Talbots, Inc., 356 F. Supp. 2d 97, 98 (D.R.I. 2005); Providence Journal Co. v. Travelers Indem. Co., 938 F. Supp. 1066, 1072 (D.R.I. 1996). Summary Judgment may be granted in cases where it is clear the moving party is entitled to judgment as a matter of law. Coca-Cola Co. v. Kelly's Taunton Ave., Inc., 308 F. Supp. 308, 309 (D.R.I. 1970).

The moving party must show that there is an absence of evidence to support the non-moving party's claim. Desrosiers v. Hartford Life & Accident Ins. Co., 354 F. Supp. 2d 119, 123 (D.R.I. 2005). In response, the non-moving party cannot merely rest on its pleadings, but must set forth specific facts demonstrating that there is a genuine issue for trial. Id. Rule 56(c) mandates an entry of summary judgment against a party who fails to make a sufficient showing to establish an element essential to that party's case, and on which that party bears the burden of proof at trial. Hall v. Eklof Marine Corp., 339 F. Supp. 2d 369, 374 (D.R.I. 2004). The test is whether as to each essential element, there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Hall, 339 F. Supp. 2d at 374.

**B. Rhode Island Law Concerning the Interpretation of Insurance Policies**

Construction of words and clauses in an insurance contract is a question of law for the court. Hughes v. American Universal Ins. Co., 1979 WL 196112, *1 (R.I. Super. Ct. July 24, 1979). Where the only dispute involves a matter of contract interpretation, summary judgment is appropriate. Id. Guided by the well-developed Rhode Island law on the construction of insurance policies:

> [T]he court must ascertain the intent of the parties by looking at the entire policy. The language used in the policy must be given its plain, ordinary and usual meaning. When the terms are found to be clear and unambiguous, the task of judicial construction is at an end. The contract terms must then be applied as written and the parties are bound by them. Policy terms that are ambiguous or susceptible to more than one reasonable interpretation will be strictly construed against the insurer. However, a policy is not to be described as ambiguous because a word is viewed in isolation or a phrase is taken out of context.

Providence Journal, 938 F. Supp. at 1073 (internal citations and quotations omitted).

An ambiguity does not exist simply because a controversy exists between Travelers and Erwin Pearl, each favoring an interpretation of the policy contrary to the other's. Bank v. IBM Corp., 145 F.3d 420, 424 (1st Cir. 1998). Courts should refrain from creating ambiguities where

none exist and "saddling insurance carriers with liabilities not fairly imposed by the insurance contract." Gleason v. Merchants Mut. Ins. Co., 589 F. Supp. 1474, 1480-81 (D.R.I. 1984).

**C. Travelers Is Entitled to Summary Judgment as to Counts I and III Because The Travelers 2003-2004 Policy Only Applies to Loss That Occurred While the Policy Was in Effect; the Amount of the Loss That Occurred While the 2003-2004 Policy Was in Effect Is Less than the Retention Amount**

Pursuant to the discovery section of the Travelers policy, the employee dishonesty coverage only applies ***"to loss which occurs during the Policy Period."*** (emphasis added). This type of fidelity policy form - which provides coverage for employee theft that occurs during the policy period -is commonly referred to as a "loss sustained" policy (which may be contrasted with a "discovery form," which provides coverage for employee theft that is discovered during the policy period regardless when the theft may have occurred). Pursuant to the clear, unambiguous terms of the Travelers policy, Travelers only has a duty to indemnify Erwin Pearl against theft that actually occurs during the policy period. In this case, since the amount stolen by Ms. Gardner during the policy period was considerably less than the retention amount, Travelers does not have a duty to indemnify Erwin Pearl.

Cases that have addressed the meaning of the term, "loss," as used in a fidelity policy written on a loss sustained basis, have widely held that the "loss" occurs at the time of the employee's dishonest act; not when the loss is discovered. See e.g., Lincoln Technical Institute of Ariz., Inc. v. Federal Ins. Co., 1996 U.S. App. LEXIS 2155 (9th Cir. Jan. 31, 1996) ( applying Arizona law) (term "loss sustained" is unambiguous in fidelity bond and occurs when money is stolen); First American Title Ins. Co. v. St. Paul Fire & Marine Ins. Co., 971 F.2d 215, 218 (9th Cir. 1991) (applying California law) ("loss" refers to employee's fraudulent conduct; insured suffered a "loss" covered under employee fidelity insurance bond when its employee fraudulently closed escrow accounts);

White Dairy Co., Inc. v. St. Paul Fire & Marine Ins. Co., 222 F. Supp. 1014 (N.D. Ala. 1963) (incidence of loss to insured under fidelity bond, for which it is entitled to be indemnified, was each act of taking by employee); Pacific Southern Mtg. Trust Co. v. Ins. Co. of No. America, 212 Cal. Rptr. 754, 757 (Cal. Ct. App. 1985) ("Ordinarily, a 'loss' occurs . . . when the insured parts with money due to the fraud or dishonesty of an employee. Under the general rule, the loss occurs at the time of the dishonest acts, not when the insured is required to make good on the loss."); Firemen's Fund Ins. Co. v. Puget Sound Escrow Closers, Inc., 979 P.2d 872 (Wash. Ct. App. 1999) (stating that the general rule is that a loss occurs under a fidelity bond at time insured's employee misappropriates insured's money or property); Commercial Bank v. St. Paul Fire & Marine Ins. Co., 336 S.E.2d 552, 556 (W.V. 1985) ("A 'loss' occurs generally under an employee fidelity insurance policy when money or other covered property is misappropriated from the insured through employee dishonesty or fraud."). As the court explained in Lincoln Tech, absent a clear intent otherwise, fidelity guaranty contracts have prospective operation only, since retrospective operation would discourage the insured's prompt discovery of employee theft and would provide an insured with the discretion of when to trigger coverage. 1996 U.S. App. LEXIS 2155, at *9.

Despite the clear policy language to the contrary, Erwin Pearl argues that coverage, under the employee dishonesty section of the Travelers Wrap CSL policy, was triggered when Erwin Pearl discovered the thefts in May 2003, during the Travelers policy period, rather than when the embezzlement occurred. In support of its position, Erwin Pearl relies upon C.P. Int'l Inc. v. Northbrook Excess & Surplus Ins. Co., 668 A.2d 647 (R.I. 1995). In that case, the First Circuit certified the following question to the Rhode Island Supreme Court: "What trigger of coverage standard would the Rhode Island Supreme Court use for determining **at what point an 'occurrence'**

**causing property damage took place within the meaning of the insurance policy provisions provided in the separate opinion** in this case, where an insured alleges that a spill of hazardous contaminants in 1974 migrated through the ground water, causing immediate injury to the pertinent property, which was not, in fact, discovered, however, until at least 1979." Id. at 647 (emphasis supplied). The court explained that: "The question certified by the First Circuit asks us to determine, under Rhode Island law, when there has been an 'occurrence' sufficient to trigger coverage under a general liability policy when the insured sustains a chemical spill that results in property loss that is not discovered until years after the spill took place. **We answer that an 'occurrence' under a general liability policy takes place when property damage, which includes property loss, manifests itself or is discovered,** or in the exercise of reasonable diligence is discoverable." Id. at 649.

The policy at issue in the Int'l C.P. case defined an occurrence as "an accident, event or happening including continuous or repeated exposure to conditions which results, during the policy period, in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the insured. All such personal injury, property damage or advertising injury caused by one event or by continuous or repeated exposure to substantially the same conditions shall be deemed to result from one occurrence." Id.

The court noted that: "Read together, the provisions of the Northbrook policy provide coverage to an insured that sustains an occurrence—that is, an event that results in compensable property damage during the policy period. In other words, there can be no occurrence under the policy without property damage that becomes apparent during the policy period, and property loss

and compensable damages cannot be assessed unless the property damage is discovered or manifests itself. 'Property damage' and 'occurrence' are thus inextricably intertwined." Id.

Unlike the policy at issue in C.P. Int'l, Inc., the policy at issue in the present case: (1) is a first-party fidelity policy, not a third-party general liability policy; and (2) it provides loss sustained coverage for intangible economic losses caused by employee dishonesty, not liability coverage for "property damage" caused by an "occurrence." The C.P. Int'l Inc. case also involved completely different policy language and a far different factual situation from that involved in this case. The court in C.P. Int'l Inc. made it clear that its holding was limited to the specific circumstances and policy language of that case. Unlike the commercial general liability policy at issue in C.P. Int'l Inc., the Travelers fidelity coverage clearly states that it only applies to theft that occurs during the policy period. Accordingly, the C.P. Int'l, Inc. case has no application to the facts of this case. Tellingly, Erwin Pearl does not cite any cases actually involving fidelity policies to support its position, because there are no cases involving this type of policy that would support Erwin Pearl's position. Accordingly, pursuant to the clear and unambiguous terms of the policy, Travelers does not have any duty to indemnify Erwin Pearl against the losses it suffered as a result of Ms. Gardner's embezzlement, because the amount of the loss that was sustained while the Travelers employee dishonesty coverage was in effect was far less than the retention amount of the Travelers policy.

### D. Travelers Is Entitled to Summary Judgment as to Count I and Count III Because the Loss Sustained During Prior Insurance Provision in the Travelers Wrap Policy Does Not Apply

Additionally, the Loss Sustained During Prior Insurance provision in the 2003-2004 Travelers Wrap policy (Sec. V.B) is clearly inapplicable to Erwin Pearl's claim for the losses it suffered as a result of the Gardener embezzlement. As noted above, this provision states:

1. If the **Insured** or a predecessor in interest sustained loss during the period of any prior insurance that it or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, the Company will pay for it under this **Coverage Part**, provided:

   a. this **Coverage Part** became effective at the time of cancellation or termination of the prior insurance; and

   b. the loss would have been covered by this **Coverage Part** had it been in effect when the acts or events causing the loss were committed or occurred.

Thus, in order to be covered by the Loss Sustained During Prior Insurance provision of the Travelers policy: (1) the loss must be sustained during the period of the prior insurance; **and** (2) the loss would have been covered under the prior insurance, except for the fact that the time within which the insured had to discover the loss had expired; **and** (3) the Travelers policy must have become effective when the prior policy was terminated or cancelled. Contrary to Erwin Pearl's position, the portion of the Gardner embezzlement loss that occurred while the St. Paul 2002-2003 coverage was in effect is not covered by the Loss Sustained During Prior Insurance section of the Travelers policy, because it fails two parts of this test totally and the other portion of the test in part. Likewise, the portion of the loss sustained while the St. Paul 2001-2002 policy was in effect also is not covered under the Travelers policy as a result of the Loss Sustained During Prior Insurance provision in the Travelers policy.

St. Paul issued Erwin Pearl a first party Premier Property Protection policy for the period October 20, 2001 to October 20, 2002. This policy provided various property damage coverages, and an "additional benefit" for employee dishonesty, subject to a limit of liability of $500,000 (Travelers' Rule 12.1 Statement of Material Facts Not in Dispute, ¶ 10). St. Paul renewed the property policy for the policy period October 20, 2002 to October 20, 2003. (Id.) St. Paul and Erwin Pearl disagree over whether the limits of liability for employee dishonesty of the 2002-2003 St. Paul

policy were originally $500,000 or $25,000, but this dispute is completely immaterial to whether there is any coverage for the Gardner embezzlement loss under the Travelers policy. Both St. Paul and Erwin Pearl apparently do agree that: (1) coverage for employee dishonesty coverage under the St. Paul policy is triggered by the discovery of the loss; (2) the loss at issue was discovered while the St. Paul 2002-2003 policy still was in effect; and (3) at the time of the discovery of the loss, the limits of liability for employee dishonesty under the St. Paul was $25,000; and (4) the entire amount of the loss would have been covered under the St. Paul 2002-2003 policy if the amount of the loss had not exceeded the applicable limits of liability for employee dishonesty under the St. Paul policy at the time that the loss was discovered by Erwin Pearl (Travelers' Rule 12.1 Statement of Material Facts Not in Dispute, ¶ 11).

The purpose of the Loss Sustained During Prior Insurance section of a fidelity policy that is written on a loss sustained basis is to avoid penalizing an insured because it switches fidelity coverage that is written on a loss sustained basis from one carrier to another. Cf. Winthrop and Weinstine, P.A. v. Travelers Cas. & Sur. Co., 187 F.2d 871, 876 (8th Cir. 1999) (court rejected insured's analysis of loss sustained during prior insurance provision because under insured's analysis, "the prior insurance provision does more than 'avoid penalizing an insured when switching insurance companies.'"). Therefore, a loss is covered under the successor loss sustained policy only if it would have been covered under the earlier loss sustained policy, except for the fact that the loss was not discovered by the insured during the grace period for discovery of the loss allowed by the earlier policy.

Like the employee dishonesty coverage provided by the Travelers policy, other fidelity policies that are written on a loss sustained basis typically provide for a specific grace period, after

the end of the policy period, for the loss to be discovered by the insured. See J.J. Corp. v. Federal Ins. Co.,730 F. Supp. 1187, 1189 (D. Mass. 1990) ("The specific type of contract at issue here is an employee crime policy or a fidelity insurance policy. These policies typically limit liability of the insurer based upon compliance with the discovery period, and at least one commentator notes that such discovery provisions are not contrary to public policy."). Thus, if the loss caused by the Gardner embezzlement had been sustained while a predecessor loss sustained fidelity policy issued to Erwin Pearl had been in effect; and the Travelers policy had become effective at the time of the termination or cancellation of the earlier policy; and the loss had not been discovered by Erwin Pearl during the earlier policy's grace period, but it was discovered while the Travelers policy was in effect (or during the grace period provided by the Travelers policy) the loss would have been covered by the Travelers policy. This is not the situation, however, that is involved in the present case.

In this case a gap in coverage was created by Erwin Pearl because it switched its employee dishonesty coverage from a stand alone crime policy written on a loss sustained basis (before October 20, 2001); to a property insurance policy written on a discovery basis by St. Paul effective from October 20, 2001; and then, in the middle of the St. Paul 2002-2003 policy period, Erwin Pearl decided to buy additional fidelity coverage from Travelers, instead of increasing the limits of liability of the St. Paul employee dishonesty coverage (as Erwin Pearl had been given the opportunity to do) (Travelers' Rule 12.1 Statement of Material Facts Not in Dispute, ¶ 12). Having made these decisions, Erwin Pearl cannot now complain that it wishes that it had purchased some other type of employee dishonesty coverage.

Here, only a small amount of the loss was sustained during the time that the 2002-2003 St. Paul policy was in effect, i.e., from October 20, 2002 onward (Travelers' Rule 12.1 Statement of

Material Facts Not in Dispute, ¶¶ 3-4); the vast majority of money embezzled by Gardner was taken *before* October 20, 2002. Moreover, St. Paul does not claim that the reason why the loss is not covered under its 2002-2003 policy is because the time which Erwin Pearl had under the St. Paul policy to discover the loss had expired. See Cincinnati Ins. Co. v. Sherman & Hemstreet, Inc., 581 S.E.2d 613 (Ga. Ct. App. 2003) (Loss Sustained During Prior Insurance provision does not apply when the time had not expired for the insured to recover under the earlier policy); United States Fidelity & Guaranty Co. v. Maxicare Healthplans & Maxicare Louisiana, Inc., 1997 WL 466802 *4 (E.D. La.) (The Loss Sustained During Prior Insurance provision "clearly states coverage for past losses will only be provided if the insured could have recovered under prior insurance 'except that the time within which to discover loss had expired.' This provision is an unambiguous condition on coverage."). In fact, the loss was discovered while the St. Paul policy was in effect; the loss was covered by the St. Paul policy (up to that policy's $25,000 limits of liability for employee dishonesty that were in effect at the time of the discovery of the loss); and the entire loss would have been covered under the St. Paul 2002-2003 policy had the limits of liability at the time of the discovery of the loss not been less than the amount of the loss.

Moreover, the Travelers policy's Loss Sustained During Prior Insurance provision does not apply because the Travelers policy did not became effective when the St. Paul 2002-2003 policy was terminated or cancelled; the Travelers policy took effect while the St. Paul 2002-2003 policy was still in effect and the St. Paul policy continued in effect for more than seven months after the effective date of the Travelers policy.

A reduction in the policy limits of the St. Paul policy (even assuming that is what occurred in February 2003), is *not* the termination or cancellation of a policy. See e.g., 2 Couch on Insurance

§ 30:3 (3d. Ed.) ("The modification of an existing contract, with the contract thereafter remaining in force as thus modified, is distinct from a cancellation which brings the policy to an end. In a strict sense, the agreement to modify the original contract manifests the intent that the original contract shall no longer govern the rights of the parties. Nevertheless, the dominant intent when a modification is made is that the original contract remain in force as modified, as distinguished from cancelling the original contract and substituting therefor a different contract."); First Financial Ins. Co. v. Albertson's, Inc., 91 P.3d 470, 472 (Colo. Ct. App. 2004) ("[T]he term 'cancellation' in the insurance context has not been used to refer to the voiding of an endorsement, an alteration in a policy, or any change other than a complete cancellation of the entire policy;" thus, deleting an additional insured under policy did not constitute a "cancellation"); Lovy v. State Farm Ins. Co., 173 Cal. Rptr. 307, 326 (Cal. Ct. App. 1981) ("Ordinarily, as used in insurance policies, the term 'cancellation' refers to: 1) an abrogation of the entire policy of insurance; or 2) that portion of the policy which remains unperformed on the date of cancellation. . . . The term cancellation is not used to refer to amendments, adjustments or modifications to any of the specific provisions within the policy.").

Nor does the Loss Sustained During Prior Insurance provision in the fidelity section of the Travelers Wrap policy apply to the portion of the Gardner embezzlement loss that occurred while the St. Paul 2001-2002 policy was in effect. As noted above, the Loss Sustained During Prior Insurance provision in the Travelers policy only applies if the Travelers policy took effect when the prior insurance was cancelled or terminated. The Travelers Wrap policy's fidelity coverage took effect on February 25, 2003 and the St. Paul 2001-2002 policy was terminated several months earlier.

In Winthrop and Weinstine, P.A. v. Travelers Cas. & Sur. Co., 187 F.3d 871 (8th Cir. 1999), three consecutive policies issued by USF&G insured Winthrop for employee dishonesty from 1990 to February 1, 1994. Id. at 872. When the last USF&G policy expired on February 1, 1994, Winthrop obtained a nearly identical policy from Aetna Casualty & Surety (a predecessor of Travelers). Id. at 872-73. The Aetna policy contained a Loss Sustained During Prior Insurance provision that was the same as the provision that is at issue in this case. Id. at 873. An employee embezzled checks from the insured from at least 1991 through 1994; the loss was discovered in September 1994. Id. Winthrop reported the loss to Travelers (which by that time had purchased Aetna) immediately after the loss was discovered, but Winthrop did not report the loss to USF&G until October 1995. Id. Travelers declined coverage to the extent that the loss occurred during USF&G's last policy period, on the ground that the one year discovery grace period provided under the USF&G policy had not expired when the loss was discovered. Therefore, the condition in the Loss Sustained During Prior Insurance provision in the Aetna (Travelers) policy, that the provision only would apply if the reason why the loss was not be covered under the earlier policy was because the loss was not discovered during the time allowed under the earlier policy, was not met. Id. at 874. USF&G declined coverage for the losses that occurred during the time it was on the risk, not because the loss was not discovered in time but because the insured did not give it timely notice of the loss, as required by its policy. Id. The court upheld USF&G's late notice defense, finding that USF&G had been prejudiced by the late notice. Id. at 875. Thus, USF&G had no duty to indemnify the insured against losses that occurred while the third USF&G policy (which immediately preceded the Aetna policy) was in effect. The court then addressed coverage under the Aetna policy pursuant to the Loss Sustained During Prior Insurance provision in that policy. Id. at 875-76. The court held that

this provision did not apply to losses that occurred during the first two USF&G policy periods,[1] because: (a) the first two USF&G policies were not prior insurance, inasmuch as the Aetna policy did not become effective at the time of the cancellation or termination of those two policies; and (b) USF&G would not have had a duty to indemnify the insured against losses that occurred during the first two USF&G policy periods because the one-year discovery period of each policy had expired. Id. at 876-77.

Accordingly, for the reasons explained above, the Loss Sustained During Prior Insurance provision in the fidelity section of the Travelers Wrap policy does not have any applicability to the present case.

### D. Travelers is Also Entitled to Summary Judgment as To Erwin Pearl's Bad Faith Claim (Count II)

In Count II, Erwin Pearl alleges that Travelers acted in bad faith and unreasonably with respect to denying the claim and in its "inordinate delay (September 9, 2003 through May 14, 2004) in investigating the claim." R.I. Gen. Laws §9-1-33(a) provides that:

> [A]n insured under any insurance policy as set out in the general laws or otherwise may bring an action against the insurer issuing the policy when it is alleged the insurer wrongfully and in bad faith refused to pay or settle a claim made pursuant to the provisions of the policy, or otherwise wrongfully and in bad faith refused to timely perform its obligations under the contract of insurance.

In Skaling v. Aetna Ins. Co., 79 A.2d 997, 1010 (R.I. 2002), the Supreme Court of Rhode Island recognized that an insurer has "the right to debate a claim that is fairly debatable." The court held that, "the question of whether or not an insurer has acted in bad faith in refusing to settle a claim

---

[1] The court did not address whether the Loss Sustained During Prior Insurance provision applied to the third USF&G policy, presumably because the insured did not argue that it did (the court had already held that since USF&G had been prejudiced by the insured's failure to give USF&G timely notice of the loss, as required by the policy, USF&G had no duty to indemnify the insured under the third policy).

shall be a question to be determined by the trier of fact. That is, bad faith is established when the proof demonstrates that the insurer denied coverage or refused payment without a reasonable basis in fact or law for the denial." Id.

As explained above, as a matter of law, Travelers has no obligation to indemnify Erwin Pearl for the losses that it suffered as a result of the Gardner embezzlement. If the court allows Travelers' Motion for Summary Judgment as to Counts I and III - agreeing that as a matter of law Travelers has no obligation to indemnify Erwin Pearl, then, as a matter of law, the bad faith claim also must fail because Erwin Pearl would not be able to establish that Travelers unreasonably or wrongfully denied coverage.

Even if the court denies Travelers' Motion for Summary Judgment as to Counts I and III, however, Travelers nonetheless is entitled to judgment as a matter of law on Count II, because Erwin Pearl has presented no facts to support its allegations of bad faith. As noted in Skaling, a "plaintiff must demonstrate an absence of a reasonable basis in law or fact for denying the claim or an intentional or reckless failure to properly investigate the claim and subject the result to cognitive evaluation." The record, however, is devoid of any such evidence. To the contrary, in light of: (1) the clear, unambiguous language in the Travelers policy; (2) the overwhelming amount of authority construing "loss" and the Loss Sustained During Prior Insurance provision in the context of fidelity policies that are in accord with Travelers' position; and (3) the absence of any contrary Rhode Island cases that are on point, Travelers' coverage position is certainly, at the very least, "fairly debatable." Thus, Travelers is entitled to summary judgment as to Count II.

## IV. CONCLUSION

For all of the reasons set forth in this Memorandum, it is clear Erwin Pearl has failed to establish that Travelers had a duty to indemnify it as a result of Ms. Gardner's embezzlement. Therefore, Erwin Pearl's failure to adduce sufficient evidence on issues essential to its case and on which it bears the burden of proof, establishes that there are no genuine issues of material fact and Travelers is entitled to judgment as a matter of law.

**WHEREFORE,** Defendant Travelers respectfully requests that this Honorable Court allow its Motion for Summary Judgment and enter judgment in its favor and against Plaintiff, Erwin Pearl, as to all Counts of Erwin Pearl's Complaint.

**Dated:** 9-15-05

Respectfully submitted,
**Travelers Casualty & Surety Company of America**, Defendant,

By: ______________________
John J. Flanagan [RI Bar #3099]
2348 Post Road
Warwick, RI 02886
(401) 732-4480/(508) 541-6050 (fax)

**CO-COUNSEL:**

______________________
Mark E. Cohen, Esq. [MA BBO # 089800]
Robert J. Maselek, Jr. [MA BBO#564690]
**The McCormack Firm, LLC**
One International Place - 7th Floor
Boston, MA 02110
Tel: (617) 951-2929
Fax: (617) 951-2672

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Memorandum in Support of the Motion for Summary Judgment of Defendant, Travelers Casualty & Surety Company of America*, was served upon all counsel of record, this 15th day of September, 2005, by mailing a copy hereof, addressed to:

Robert K. Taylor, Esq.
**Partridge Snow & Hahn LLP**
180 South Main Street
Providence, RI 02903-7120

Stephen H. Burke, Esq
**Ratcliffe Burke Harten & Elias, LLP**
1600 Financial Plaza
Providence, RI 02903

Anthony R. Zelle
**Denner O'Malley LLP**
Four Longfellow Place, 35th Floor
Boston, MA 02114

Robert J. Maselek, Jr.

#77020v1<MEBOS> -Erwin Pearl v Travelers - [v.5]REVISED Memo in Sup