# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

ARMBRUST INTERNATIONAL, LTD.
AND
ERWIN PEARL, INC.,
Plaintiffs

*v.*

TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA
AND
ST. PAUL FIRE & MARINE INSURANCE COMPANY,
Defendants

CIVIL ACTION NO.:

CA 04 212 ML

## DEFENDANT, TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, RULE 12.1 STATEMENT OF MATERIALS FACTS NOT IN DISPUTE

Pursuant to Local Rule 12.1 and F.R.C.P. 56, the Defendant, Travelers Casualty & Surety Company of America ("Travelers"), submits this Rule 12.1 Statement of Materials Facts Not in Dispute:

1. Travelers incorporates as if set forth herein any facts not contested by Travelers contained in Plaintiffs' Rule 12.1 Statement of Materials Facts Not in Dispute.

2. The St. Paul-Travelers merger became effective in April 2004 (see Deposition of Fionuala Dullea, Exhibit A, p. 117, lines 1-10).

3. After 2002, Michelle Kyles Gardner embezzled the 17 checks listed on the last page of Exhibit C (Deposition of Thomas J. Baker, Exhibit B, p. 16, lines 19-25). The total amount of the loss that occurred during the time that the Travelers Wrap fidelity coverage was in effect was $1,144.08 (see Dullea Deposition, Exhibit A, p. 82, lines 20-25).

4. The amount actually embezzled by Ms. Gardner after February 25, 2002 was less than $25,000 (see Dullea Deposition, Exhibit A, p. 82, lines 20-25).

5. Travelers issued a Wrap policy to Erwin Pearl for the period March 12, 2002 to March 12, 2003 (Deposition of Vincent R. Capone, Jr., Exhibit D, p.252, lines 4-14). As originally issued, the 2002-2003 Wrap policy included only third party coverage for employment practices liability, directors & officers, and fiduciary liability. (Id.)

6. At Erwin Pearl's request, effective as of February 25, 2002, Travelers added first party fidelity coverage, including coverage for employee dishonesty, to the 2002-2003 Wrap policy (Capone Deposition, Exhibit D, p. 62, lines 20-25; p. 63, line 1). Travelers did not charge Erwin Pearl anything for this additional coverage for the short time remaining in the policy period (Capone Deposition, Exhibit D, p.63, lines 2-6).

7. Travelers renewed the Wrap policy, including the fidelity coverage added in February 2003, for the policy period March 12, 2003 to March 12, 2004 (Plaintiffs' Rule 12.1 Statement of Material Facts Not in Dispute, ¶ 48, and Exhibit B thereto). The retention amount applicable to the Travelers Wrap policy's employee theft coverage is $25,000 (Id.). Pursuant to the discovery portion of the fidelity section of the Travelers Wrap policy, the employee theft coverage only applies, "to loss which occurs during the policy period." (Id.)

8. Section V.B. of the fidelity section of the Wrap policy, the Loss Sustained During Prior Insurance provision, provides that:

> 1. If the **Insured** or a predecessor in interest sustained loss during the period of any prior insurance that it or the predecessor in interest

> could have recovered under that insurance except that the time within which to discover loss had expired, the Company will pay for it under this **Coverage Part**, provided:
>
> a. this **Coverage Part** became effective at the time of cancellation or termination of the prior insurance; and
>
> b. the loss would have been covered by this **Coverage Part** had it been in effect when the acts or events causing the loss were committed or occurred.

(Plaintiffs' Rule 12.1 Statement of Material Facts Not in Dispute, ¶ 48, and Exhibit B thereto).

9. On or about February 24, 2004, Travelers orally informed Erwin Pearl that the Wrap policy did not apply to losses that did not occur during the policy period. (Dullea Deposition, Exhibit A, p. 113, lines 3-21, Dullea Deposition Exhibit 37).

10. St. Paul issued Erwin Pearl a Premier Property Protection policy, for the period October 20, 2001 to October 20, 2002, that provided an "additional benefit" for employee dishonesty coverage, subject to a limit of liability of $500,000 (Deposition of Ronald G. Mund, Exhibit E, p. 23, lines 8-19). St. Paul agreed to extend the expiration date of the 2001-2002 policy (including the $500,000 in employee dishonesty coverage) from October 20, 2002, to November, 20, 2002. (Id. at p. 40, lines 18-24; p. 41, lines 1-5). St. Paul renewed the property policy for the policy period October 20, 2002 to October 20, 2003 (Id. at p. 58, lines 22-24; p. 59, lines 1-10). St. Paul and Erwin Pearl disagree over whether the limits of liability for employee dishonesty of the 2002-2003 St. Paul policy were originally $500,000 or

$25,000 (*compare* Plaintiffs' Rule 12.1 Statement ¶ 28 *with* Mund Deposition, Exhibit E, p. 89, lines 13-24; p. 90, lines 1-8).

11. Both St. Paul and Erwin Pearl apparently do agree that: (1) coverage for employee dishonesty coverage under the St. Paul policy is triggered by the discovery of the loss; (2) the loss at issue was discovered while the St. Paul 2002-2003 policy still was in effect; (3) at the time of the discovery of the loss, the limits of liability for employee dishonesty under the St. Paul policy was $25,000; and (4) the entire amount of the loss would have been covered under the St. Paul 2002-2003 policy if the amount of the loss had not exceeded the applicable limits of liability for employee dishonesty under the St. Paul policy at the time that the loss was discovered by Erwin Pearl (see St. Paul's Answer to Interrogatory No. 14, Exhibit F ; Plaintiffs' Rule 12.1 Statement ¶¶ 52, 59, 60).

12. Erwin Pearl switched its employee dishonesty coverage from a stand alone crime policy (before October 20, 2001); to a property insurance policy written on a discovery basis by St. Paul effective from October 20, 2001; and then, in the middle of the St. Paul 2002-2003 policy period, Erwin Pearl decided to buy additional fidelity coverage from Travelers, instead of increasing the limits of liability of the St. Paul employee dishonesty coverage (as Erwin Pearl had been given the opportunity to do) (Plaintiffs' Rule 12.1 Statement ¶¶ 5,6, 11, 39, 48). Erwin Pearl took into account the amount of the premiums being charged in determining to switch its fidelity coverage to the

St. Paul policy in 2001 and then to buy additional fidelity coverage from Travelers, rather than from St. Paul, in February 2003; Erwin Pearl wanted to obtain coverage with the lowest premium possible from "creditworthy companies who could write coverage which would handle our industry well . . . ." (see Deposition of Michael Brozost, Exhibit G, p. 12, lines 4-7; p. 40, lines 12-21).

13. The Preston Agency is Erwin Pearl's independent insurance agent "with contracts to sell insurance for various companies, more than one company." (Capone Deposition, Exhibit D, p.8, lines 17-25; p. 9, lines 1-2). Preston considered the insureds—such as Erwin Pearl—to be its clients, not the insurers from whom it obtained policies (Capone Deposition, Exhibit D, p. 9, lines 16-23). As an independent agent, Preston was, "representing the insureds' interest." (Id. at p. 86, lines 10-13).

14. Preston describes the nature of the services it provides to its clients (such as Erwin Pearl) as follows: "We seek to provide extraordinary solutions and service by working with several insurance companies to find you the best combination of product and price. We are your advocate. We work for you, not an insurance company. When you call us with a question, you will get a fast, accurate response. We will take care of your claim and help you through any billing questions you may have. We are different. We work for you. . . . ." (Capone Deposition, Exhibit D, p.17, lines 3-25; p. 18, lines 1-7).

Dated: 9/15/05

Respectfully submitted,
**Travelers Casualty & Surety Company of America**, Defendant,

By: ______________________
John J. Flanagan [RI Bar #3099]
2348 Post Road
Warwick, RI 02886
(401) 732-4480/(508) 541-6050 (fax)

**CO-COUNSEL:**

______________________
Mark E. Cohen, Esq. [BBO # 089800]
Robert J. Maselek, Jr. [BBO#564690]
**The McCormack Firm, LLC**
One International Place - 7th Floor
Boston, MA 02110
Tel: (617) 951-2929
Fax: (617) 951-2672

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 15th day of September, 2005, to:

Robert K. Taylor, Esq.
**Partridge Snow & Hahn**
180 South Main Street
Providence, RI 02903-7120

Stephen H. Burke, Esq
**Ratcliffe Burke Harten & Elias, LLP**
1600 Financial Plaza
Providence, RI 02903

Anthony R. Zelle
**Denner O'Malley LLP**
Four Longfellow Place, 35th Floor
Boston, MA 02114

Robert J. Maselek

77051.1