# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

ARMBRUST INTERNATIONAL, LTD.
AND
ERWIN PEARL, INC.,
Plaintiffs

*v.*

TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA
AND
ST. PAUL FIRE & MARINE INSURANCE COMPANY,
Defendants

CIVIL ACTION NO.:

CA 04 212 ML

## MEMORANDUM OF DEFENDANT, TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, IN OPPOSITION TO THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

The Defendant, Travelers Casualty & Surety Company of America ("Travelers"), submits this Opposition to the Motion for Partial Summary Judgment of Plaintiffs, Armbrust International, Ltd. and Erwin Pearl, Inc. (collectively "Erwin Pearl"). Travelers incorporates by reference herein its Motion for Summary Judgment, and all supporting materials.

Both Erwin Pearl and Travelers have moved for summary judgment as to Counts I and III of Erwin Pearl's Complaint - causes of action for breach of contract and declaratory judgment.[1] Erwin Pearl alleges that by refusing to indemnify it against the loss it sustained as a result of the Gardner embezzlement, Travelers has breached its contract with Erwin Pearl. As explained in more detail in Travelers' Memorandum in Support of its Motion for Summary Judgment, however, Travelers

[1] Travelers has also moved for summary judgment as to Count II of Erwin Pearl's Complaint - which alleges bad faith.

does not have any duty to indemnify Erwin Pearl because: (a) the Travelers 2003-2004 policy only applies to loss that occurred while the policy was in effect and the loss at issue occurred when the embezzlement took place, not when the embezzlement was discovered; (b) the amount of the loss that occurred while the Travelers Wrap policy was in effect is less than the retention amount; and (c) the Loss Sustained During Prior Insurance provision in the Travelers Wrap policy does not apply. Moreover, as detailed below, Travelers is not estopped from asserting its coverage defenses.

Therefore, the Court should deny Erwin Pearl's Motion for Partial Summary Judgment and allow Travelers's Motion for Summary Judgment.

## II. Erwin Pearl is *Not* Entitled to Judgment As a Matter of Law

### A. The St. Paul-Travelers Merger Is Irrelevant

Although Erwin Pearl repeatedly implies that there is something suspicious, unusual or wrong about St. Paul and Travelers taking different interpretations of the trigger of coverage under their completely different policies, Erwin Pearl ignores that: (a) the St. Paul and Travelers policies are entirely different types of policies; and (b) relevant terms of the St. Paul and Travelers policies are completely different. The Travelers policy provides traditional fidelity coverage written on a loss sustained basis and the employee dishonesty coverage in the policy only applies"to loss which occurs during the Policy Period." The St. Paul policy is a first party property damage policy, that includes employee dishonesty coverage as an additional benefit and it does not contain language concerning the trigger of coverage that is similar to that of the Travelers policy. Thus, it is neither surprising, nor relevant, that St. Paul and Travers have taken different positions as to the trigger of coverage under their own policies.

Erwin Pearl claims that Travelers has taken a position concerning the trigger of coverage that

is "diametrically opposing" the position that has been taken by Travelers' "sister company" St. Paul. This argument, however, is a red herring. In its Rule 12.1 Statement, Erwin Pearl notes that *at the time it filed the Complaint*, St. Paul and Travelers were related companies. Although this statement is true (the St. Paul-Travelers merger became effective in April 2004[2] and the Erwin Pearl Complaint was filed shortly thereafter in May 2004); Travelers and St. Paul were entirely separate and unrelated companies when: (a) the Travelers policy was issued, (b) the St. Paul policy was issued, (c) the Gardner embezzlement occurred, (d) the loss was discovered by Erwin Pearl, (e) Erwin Pearl filed its proofs of loss, and (f) the carriers made their respective coverage determinations.

**B. Erwin Pearl's Focus On the Its Discussions With Its Broker, The Preston Agency, is Not Relevant to Whether There Is Coverage under the Travelers Policy for this Loss**

Erwin Pearl devotes considerable time to a discussion of its version of its discussions with Erwin Pearl's broker, the Preston Agency, and St. Paul concerning its attempts to obtain employee dishonesty coverage in late 2002 and early 2003. This information, however, is not relevant to whether there is coverage for Erwin Pearl under the Travelers policy and is merely an attempt by Erwin Pearl to cloud the issues. The simple fact is that neither Erwin Pearl nor The Preston Agency has claimed that the policy form that Travelers actually issued was not the policy that The Preston Agency, on behalf of Erwin Pearl, bargained for or that Travelers agreed to issue. It was not the responsibility of Travelers to confirm that the coverage reflected in the Travelers policy was "equivalent" to the St. Paul policy. Simply put, it is not the responsibility of Travelers if the terms of the Travelers policy are not what Erwin Pearl wanted, expected, now wishes it had purchased,

---

[2] See Travelers Rule 12.1 Statement, ¶ 2.

or instructed Preston to obtain. Erwin Pearl's right to recovery as a result of any negligence or wrongdoing on the part of Preston is against Preston—**not** Travelers.

The facts that are relevant to this insurance coverage dispute include the circumstances of the loss (including the timing of the embezzlement by Ms. Garner), which is not in dispute, and the relevant terms of the Travelers policy, which are also undisputed. The dispositive legal question is whether Travelers has an obligation to indemnify Erwin Pearl, based upon the terms of the Travelers policy and the undisputed facts. As explained in more detail in Travelers' Memorandum in Support of its Motion for Summary Judgment, Travelers does not have any duty to indemnify Erwin Pearl for the loss that is at issue.

### C. Travelers is Not Estopped From Asserting Its Coverage Defenses

Although Erwin Pearl has not formally asserted that Travelers may be held liable for the conduct of Erwin Pearl's broker, The Preston Agency, Erwin Pearl argues—in passing—that Travelers somehow should be estopped from "asserting" that the terms of the Travelers policy are not "essentially equivalent" to the terms of the St. Paul policy, because a Preston employee purportedly "believed" the coverages to be essentially the same. Erwin Pearl, however, did not brief the issue of "estoppel," nor did it explain why that doctrine should be applicable to this matter.

As an initial matter, it is clear that, under Rhode Island law,[3] Travelers is not legally responsible for the conduct of The Preston Agency in determining what insurance to procure for its client, Erwin Pearl. It is undisputed that The Preston Agency is an "independent agent." (See Plaintiffs' Rule 12.1 Statement, ¶ 7). Preston is not a "captive" agent of Travelers. As explained by Vincent Capone, Jr., of Preston, the producer for the Erwin Pearl account, Preston is Erwin

[3] Rhode Island law on this issue is in accord with the majority rule in other jurisdictions.

Pearl's independent insurance agent "with contracts to sell insurance for various companies, more than one company." (Travelers' Rule 12.1 Statement of Material Facts Not in Dispute, ¶ 7) Preston considered the insureds—such as Erwin Pearl—to be its clients, not the insurers from whom it obtained policies on behalf of its clients. (Id.). Preston describes the nature of the services it provides to its clients (such as Erwin Pearl) as follows: "We seek to provide extraordinary solutions and service by working with several insurance companies to find you the best combination of product and price. ***We are your advocate. We work for you, not an insurance company.*** When you call us with a question, you will get a fast, accurate response. We will take care of your claim and help you through any billing questions you may have. ***We are different. We work for you.*** . . . ." (emphasis added). (Travelers' Rule 12.1 Statement of Material Facts Not in Dispute, ¶ 8).

Rhode Island law is clear that, "in instances in which [as in the present case] an insurance agent represents several [insurance] companies and has the freedom to choose the company with which he would place an insurance policy, the individual [is] . . . the agent of the insured and not the insurer." General Accident Ins. Co. of Am. v. American Nat'l Fireproofing, Inc., 716 A.2d 751, 756 (R.I. 1998); see also, Paul Revere Life Ins. Co. v. Fish, 910 F. Supp. 58, 64 (D. R.I. 1996) ("Under Rhode Island law, 'it is well settled that an insurance agent who is empowered merely to solicit or accept applications for insurance is the agent of the applicant and not the agent of the company.'"). (quoting Ferla v. Commercial Casualty Ins. Co., 74 R.I. 190, 59 A.2d 714, 716 (1948)).

In General Accident, the insured submitted an application for insurance to General Accident through the Wilson Agency ("Wilson"). Wilson was authorized by General Accident "to solicit and submit applications for insurance and to issue and deliver policies, certificates, and binders of insurance on behalf of" the carrier. Id. at 752. General Accident issued the policy. The insured then

requested - through Wilson - that a second policy be issued to a separate entity. Id. at 752. Wilson issued two certificates of insurance to the second entity. The first certificate indicated that it was a "binder," but contained no policy number. The second certificate indicated coverage was being extended by General Accident to the second entity under the original policy. Id. Wilson, however, never asked General Accident to issue the second policy. The insured nonetheless sought coverage from General Accident on the "second policy," on the ground that the carrier should be estopped from denying coverage because the insured relied upon the certificates of insurance to its detriment. Id. at 754. The insured also argued that Wilson's failure to obtain adequate insurance coverage should be imputed to General Accident. Id. at 756.

The Supreme Court of Rhode Island explained that in Etheridge v. Atlantic Mut. Ins. Co., 480 A.2d 1341 (R.I.1984), it held that, while an insurance agent "might simultaneously represent two independent principals . . . in instances in which an insurance agent represents several companies and has the freedom to choose the company with which he would place an insurance policy, the individual [is] the agent of the insured and not the insurer." Id. (quoting Etheridge, 480 A.2d at 1346). In General Accident, Wilson was an independent insurance broker placing insurance with multiple companies, not only General Accident. Therefore, to the extent that Wilson was procuring insurance for the insured, at the insured's request, Wilson was acting as the insured's agent and Wilson's "[f]ailure to carry out this duty in accordance with [the insured's] . . . request constitutes a breach of their duty to [the insured] and cannot be imputed to General Accident." Id. at 756. In issuing the certificate of insurance, however, Wilson was acting as General Accident's agent pursuant to the agency agreement. To the extent that these certificates evidenced liability coverage, General Accident was bound by the terms of the underlying policy. Id.

In Etheridge, 480 A.2d at 1342, a third-party personal injury suit was filed against the insured as a result of a boating accident. The insured had procured various insurance policies thorough Nichols, "a licensed independent insurance agent who represented a number of insurance companies[.]" Id. at 1343. Like Erwin Pearl in the present case, Nichols had advised the insured with respect to insurance issues "for many years." Id. The trial court ruled that Nichols was an agent of the carrier "in determining the appropriate amount of insurance" for the boating policy. Id. at 1346. The Supreme Court of Rhode Island, however, reversed, holding that:

> [A]s a matter of law only one conclusion is possible in respect to Nichols's agency. That conclusion, . . . is that in his capacity as adviser, distributing the risk and determining the appropriate amount of coverage to obtain from any of the companies among whom the risk might be distributed, Nichols was acting as agent of the [insured] . . . rather than of any of the carriers. Once he decided to issue a policy, he was, of course, [the carrier's] authorized agent in issuing the policy for the amount stated, but not in the initial determination of fixing that amount.

Id. The court explained that there was not "a shred of evidence" that the carrier "was in the business of advising the [insured] . . . or others concerning the distribution of risks among various insurance carriers or the appropriate underlying policy of insurance in order to meet the requirements of a 'scope,' or 'umbrella,' policy." Id.

The Rhode Island rule that, at least with respect to issues such as what type or amount of coverage an insured should purchase, an independent agent is the agent of the insured and not the insurer, is also the rule in most other jurisdictions. See, e.g., 44 C.J.S. Insurance §180 ("An insurance agent who is not owned or controlled by any insurance company and who is not precluded from representing any number of insurance companies is an independent insurance agent, and, as such, is generally considered the agent of insured, not of the insurance company."); Lewis-Williamson v. Grange Mut. Ins. Co., 39 P.3d 947, 950 (Or. Ct. App. 2002) ("Generally, an

*independent* agent or broker is viewed as an agent of the insured and owes a duty of reasonable care to the principal insured."); Malone v. Basey, 770 N.E.2d 846, 851 (Ind. Ct. App. 2002) ("Generally, an insurance agent representing several companies is considered to be an insurance broker. An insurance agent or broker who undertakes to procure insurance for another is an agent of the proposed insured. However, . . . an insurance broker becomes the agent of the insurer when an insurance policy is issued[,] . . . 'and can bind it within the scope of his authority.'") (quoting Aetna Ins. Co. of the Midwest v. Rodriguez, 517 N.E.2d 386, 388 (Ind.1988)); Employers Mut. Cas. Co. v. Wendland & Utz, Ltd., 351 F.3d 890, 896 (8th Cir. 2003) ("An insurance agent acts on behalf of a particular insurance company, whereas an insurance broker acts on behalf of the prospective insured;" "[t]he distinction is important because an insurance company is only liable for the torts of its agents. Conversely, a broker is independently liable to the insured in either contract or tort for failing to procure insurance as instructed. In other words, a broker's liability for negligence cannot be imputed to the insurance company." (internal citations and punctuation omitted); Washington Nat'l Ins. Co. v. Strickland, 491 So.2d 872, 875 (Ala. 1985) ("An independent agent or broker is usually not an agent for the insurer at all; rather, he is the agent of the insured.) (internal citations omitted).

Moreover, Travelers had no independent duty to advise Erwin Pearl regarding its insurance needs or the types of coverages that it should obtain. The general rule is that, absent special circumstances, an insurer does not have a duty to advise an insured as to the insured's insurance coverage needs. See Brant v. Geico Gen. Ins. Co., 3 F.3d 1172, 1173 (8th Cir. 1993) (insurance carrier had no duty to provide advise to the insured as to adequate insurance coverage because, "the duty to provide advice about insurance coverage exists only when the insurance counselor holds

himself out as an insurance specialist and receives compensation, apart from the insurance premiums, for consultation and advice."); Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C. v. XL Specialty Ins. Co., 261 F. Supp. 2d 546, (S.D. W. Va. 2003) ("Many courts have recognized the general rule that absent special circumstances, an insurer or its agent has no duty to advise an insured as to the insured's insurance coverage needs.") (internal citations and punctuation omitted); Fitzpatrick v. Hayes,67 Cal. Rptr.2d 445, 452 (1997))).

The "estoppel" sought by Erwin Pearl is simply inappropriate in this case. As explained in General Accident, 716 A.2d 751, 755:

> The doctrine of estoppel is an equitable doctrine that will operate to bar a person from denying liability when the party makes " '[a] promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance ... [and] injustice can be avoided only by enforcement of the promise.' In the context of insurance coverage the insured must show "(1) that he was misled by the acts or statements of the insurer or its agent; (2) reliance by the insured on those representations; (3) that such reliance was reasonable; and (4) detriment or prejudice suffered by the insured based on the reliance. **The relevant cases are clear, however, that the doctrine of estoppel cannot be used to enlarge coverage beyond that which is set out in the policy.**

(internal citations omitted) (emphasis added).

Not only does Erwin Pearl's argument that Travelers should be estopped from "asserting" that the terms of the Travelers policy are not "essentially equivalent" to the terms of the St. Paul policy, because Mr. Capone and Ms. Wright allegedly "believed" the coverages to be essentially the same, not have any legal support, but it does not have any factual support either. As Travelers demonstrated in its Response to ¶ 44 of Plaintiff's Rule 12.1 Statement, Erwin Pearl's assertion that, "both Judy Wright and Vincent Capone of Preston believed and understood that the coverages [the Travelers policy and the predecessor St. Paul policy] were essentially equivalent, written on an occurrence basis," is wholly unsupported by the record. See Travelers' Response to ¶ 44 of

Plaintiff's Rule 12.1 Statement. Mr. Capone actually testified that when he said that he believed the "coverage" provided by the St. Paul and Travelers policies was "essentially equivalent," he was not referring to, "anything other than policy limits." Id. Similarly, since Ms. Wright *did not consider what was the trigger of coverage*, she could not have formed the opinion that the trigger of coverages in the two distinct policies was the same. Id.

In any event, Erwin Pearl has not proffered any evidence that Travelers made any representations or statements to Erwin Pearl (or to Preston) that the coverage in its policy was "essentially equivalent" to the St. Paul policy or that the Travelers policy would provide coverage on a discovery basis. The record is devoid of any evidence that Travelers was even aware of the terms of the St. Paul policy when Travelers issued its policy.

**WHEREFORE**, Defendant, Travelers, requests that the Court deny Erwin Pearl's Motion for Partial Summary Judgment and allow Travelers' Motion for Summary Judgment.

Respectfully submitted,

**Dated:** 9/23/05

**Travelers Casualty & Surety Company of America**, Defendant,

By: JJF/by a[illegible]

John J. Flanagan [RI Bar #3099]
2348 Post Road
Warwick, RI 02886
(401) 732-4480/(508) 541-6050 (fax)

**CO-COUNSEL:**

Mark E. Cohen, Esq. [MA BBO # 089800]
Robert J. Maselek, Jr. [MA BBO#564690]
**The McCormack Firm, LLC**
One International Place - 7th Floor
Boston, MA 02110
Tel: (617) 951-2929
Fax: (617) 951-2672

# CERTIFICATE OF SERVICE

I hereby certify that an unsigned true and correct copy of the foregoing *Travelers Casualty & Surety Company of America Memorandum in Opposition to the Plaintiffs' Motion for Summary Judgment*, was served upon all counsel of record, by regular mail, on September 19, 2005, and that this signed copy of *Travelers Casualty & Surety Company of America Memorandum in Opposition to the Plaintiffs' Motion for Summary Judgment*, was served upon all counsel of record, by regular mail, this 23rd day of September, 2005, by mailing a copy hereof, addressed to:

Robert K. Taylor, Esq.
**Partridge Snow & Hahn LLP**
180 South Main Street
Providence, RI 02903-7120

Stephen H. Burke, Esq
**Ratcliffe Burke Harten & Elias, LLP**
1600 Financial Plaza
Providence, RI 02903

Anthony R. Zelle
**Denner O'Malley LLP**
Four Longfellow Place, 35th Floor
Boston, MA 02114

Robert J. Maselek, Jr.

#76905v1<MEBOS> -Pearl v Travelers SJ Opposition (final)