# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

ARMBRUST INTERNATIONAL, LTD.
and ERWIN PEARL, INC.,
Plaintiffs,

v.

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA and ST. PAUL FIRE AND MARINE INSURANCE COMPANY,
Defendants.

C.A. No. 04-212 ML

## PLAINTIFFS' OPPOSITION TO TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Erwin Pearl, Inc. and Armbrust International, Ltd., through counsel, submit the following opposition to Travelers Casualty and Surety Company's ("Travelers") Motion For Summary Judgment.

## I. The Travelers' 2003-2004 Policy Covers Property Loss Discovered in 2003.

There was only one loss in this case: the embezzlement of property (here, money) by one of Plaintiffs' employees. Yet the two defendants in this litigation maintain completely contradictory positions as to when the loss occurred. St. Paul Fire & Marine Insurance Co. ("St. Paul") says that the property loss occurred when it was discovered. Travelers says the property loss occurred when it was sustained. Under Rhode Island law, the defendants can not have it both ways. These contradictory positions must be reconciled in favor of coverage for the loss.

Travelers' efforts to distinguish *CPC International Inc. v. Northbrook Excess & Surplus Insurance Co.*, 668 A.2d 647 (R.I. 1995), are unavailing. Travelers argues that *CPC International* is factually dissimilar because "the policy at issue in the present case: (1) is a first-

party fidelity policy, not a third-party general liability policy; and (2) it provides loss sustained coverage for intangible economic losses caused by employee dishonesty, not liability coverage for 'property damage' caused by an 'occurrence.'" Memorandum at 9. On the contrary, in *CPC International,* as here, the insured was trying to recover for loss or damage to property. *Id.* at 649 (question presented is "when there has been an 'occurrence' sufficient to trigger coverage under a general liability policy when the insured sustains a chemical spill that results in property loss that is not discovered until years after the spill took place."). In *CPC International* the loss was caused by a chemical spill rather than an embezzlement, but there can be no dispute that Plaintiffs have also suffered a property loss in light of the language in the Travelers policy that equates money with property. Undisputed Fact No. 48 (policy covers "direct loss of, and direct loss from damages to, Money, Securities <u>and other property</u> resulting from Employee Theft") (emphasis added).

Under *CPC International*, a property loss occurs when it manifests itself or is discovered, or in the exercise of reasonable diligence is discoverable. If Travelers were correct that *CPC International* only applies to third-party general liability policies, then St. Paul's coverage determination that *CPC International* does apply to Plaintiffs' property protection policy would be unfounded.

## II. <u>The Prior Insurance Provision Of The Travelers Policy Covers The Loss.</u>

Travelers argues that the Prior Insurance provision of the Travelers 2003-2004 policy does not create coverage because the prior insurance – $500,000 of employee dishonesty coverage under the St. Paul policies – was not terminated or cancelled. Memorandum at 13-14. It is undisputed, however, that in early 2003 St. Paul advised Plaintiffs that the highest amount of employee dishonesty coverage St. Paul would continue to provide was $250,000. Plaintiffs'

Undisputed Facts Nos. 35, 37, 39. As a result, Plaintiffs secured replacement coverage of $500,000 (excess of $25,000 primary coverage) from Travelers. St. Paul clearly terminated Plaintiffs' $500,000 coverage by refusing to renew it, satisfying this element of the Travelers Prior Insurance provision.

Travelers also argues that there was a gap in coverage that defeats coverage under the Prior Insurance provision. Memorandum at 12. On the contrary, Plaintiffs were covered up to $500,000 by St. Paul until replacement coverage could be found because of St. Paul's failure to give notice of a change of policy limits as required by Rhode Island law. *See* R.I. Department of Business Regulation Insurance Regulation 38; R.I.G.L. § 42-35-3(a).

Travelers relies on *Winthrop & Weinstine, P.A. v. Travelers Cas. & Sur. Co.*, 187 F.3d 871 (8th Cir. 1999), to argue that the Prior Insurance provision covers only losses from thefts committed between the inception of the St. Paul 2002-2003 policy and the inception of the Travelers 2003-2004 policy. Memorandum at 15-16. In *Winthrop*, the issue was whether the first two of three consecutive one year policies issued by USF&G could be considered prior insurance under the language of a Travelers policy issued in year four. The court concluded that on the facts before it they could not, reasoning that if USF&G had issued the year four policy rather than Travelers, USF&G would have declined coverage under the year one and year two policies and Travelers should not be placed in a worse position than USF&G would have been in:

> Finally, Winthrop's reading of the prior insurance clause contradicts its own assertions regarding the purpose of the clause. In its memorandum in opposition to summary judgment and again in its brief, Winthrop states that the purpose of prior insurance clauses is "to avoid penalizing an insured when switching insurance companies." If USF&G had issued a "period four" insurance policy, instead of Travelers, USF&G would not be liable for the period one and two losses because under Winthrop's

> analysis, the separate one year discovery windows for periods one and two had expired before discovery of loss. Yet, Winthrop contends that Travelers (who issued the "period four" insurance) should be liable for period one and two losses. Under Winthrop's analysis, the prior insurance provision does more than "avoid penalizing an insured when switching insurance companies." By breaking the USF&G policy into periods for purposes of discovery windows, but considering the USF&G policy as a whole for determining whether the Travelers policy came into effect at the termination of prior insurance, [Winthrop] seeks to reap a benefit for switching insurance companies.

*Winthrop*, 187 F.3d at 876.

Applying the reasoning of *Winthrop* to this case, the Travelers Prior Insurance clause covers Plaintiffs' loss because St. Paul does not dispute that it would be liable for earlier losses had they been discovered before St. Paul terminated Plaintiffs' $500,000 employee dishonesty coverage. Undisputed Fact No. 60.[1] In other words, if St. Paul rather than Travelers had still been insuring Plaintiffs for $500,000 in May 2003, St. Paul would have been liable for the entire loss. Travelers, which provided replacement coverage when St. Paul terminated Plaintiffs' $500,000 employee dishonesty coverage, is liable to the same extent under its Prior Insurance clause.

Travelers accepted the risk of offering coverage for loss that would have been covered by Plaintiffs' prior employee dishonesty policy, provided that there was no gap in coverage. While Travelers may now wish that it had written its policy to provide coverage only where the prior insurance was written on a loss sustained basis, the Travelers policy does not have this limitation.

---

[1] As stated in St. Paul's coverage determination letter, it is St. Paul's position that "[i]n Rhode Island a claim for property damage is covered under the policy that is in effect when the damage manifests itself, is discovered or, in the exercise of reasonable diligence is discoverable." Plaintiffs' Complaint, Exhibit A.

III. **Summary Judgment On Plaintiffs' Bad Faith Claim Should Be Denied.**

Travelers urges the court to grant summary judgment as to Count II, Plaintiffs' bad faith claim. Memorandum at 16-17. This request should be denied.

Whether an insurer has acted in bad faith is an issue of fact. *Skaling v. Aetna Insurance Co.*, 799 A.2d 997, 1010 (R.I. 2002) ("we hold, consistent with § 9-1-33, that 'the question of whether or not an insurer has acted in bad faith in refusing to settle a claim shall be a question to be determined by the trier of fact.'"). In *Skaling*, the Rhode Island Supreme Court clarified that a bad faith claim may proceed even if the insured lacks sufficient proof to secure a judgment that the insurer's position is unreasonable as a matter of law. The Court also clarified that an insurer may be liable for bad faith even if its coverage position is found to be "fairly debatable:"

> The insurer's failure to conduct an appropriate and timely investigation may subject the insurer to bad faith liability notwithstanding the merits of the claim. Although a fairly debatable claim "is a necessary condition to avoid liability [for] bad faith, it is not always a sufficient condition." Rather, we are satisfied that "[t]he appropriate inquiry is whether there is sufficient evidence from which reasonable [minds] could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable."

799 A.2d at 1011 (quoting *Zilisch v. State Farm Mutual Automobile Insurance Co.*, 995 P.2d 276, 280 (Ariz. 2000)).

Travelers' coverage position is not "fairly debatable" under Rhode Island law, for the reasons set forth in Plaintiffs' summary judgment papers. Even if Travelers' coverage position were fairly debatable, however, summary judgment on Plaintiffs' bad faith claim must be denied because there are facts from which reasonable minds could conclude that the insurer acted unreasonably in processing the claim. These facts include the lengthy delay between the

time Plaintiffs submitted their proofs of claim and the time that Travelers issued its coverage determination, and other facts that Michael Brozost of Erwin Pearl identified in a letter to Fionuala Dullea of Travelers dated February 26, 2004. Exhibit A (Brozost Depo. Ex. 10). Plaintiffs allege that Travelers wrongfully and in bad faith delayed making a coverage determination until it could coordinate its response to Plaintiffs' claim with St. Paul, Travelers' sister company, in order to minimize the two companies' potential exposure to Plaintiffs' claims.

Travelers issued a coverage determination on March 23, 2004, ten months after it was notified of the loss. Undisputed Fact No. 61. St. Paul issued its coverage determination one day later, on March 24, 2004. Undisputed Fact No. 60. Documents produced in discovery confirm that representatives of St. Paul and Travelers communicated about Plaintiffs' claims on more than one occasion prior to issuing their coverage determinations. Exhibit B. Indeed, Travelers initially refused to produce documents reflecting communications with St. Paul, doing so only in the face of a motion to compel. *See* Plaintiffs' Motion to Compel Production, dated March 29, 2005; Travelers Memorandum in Support of Objection to Motion to Compel, dated April 8, 2005. While St. Paul and Travelers did not formally merge until April 2004, shortly after the coverage determinations were issued, public records filed with the Securities Exchange Commission confirm that the merger agreement was signed six months earlier, in November 2003. Exhibit C. Thus, during the time that St. Paul and Travelers representatives were discussing Plaintiffs' claims, they were aware of the pending merger and had a common motive to arrive at coordinated coverage positions that maximized the benefit to their merging companies.

Under Rhode Island law, "an insurance company has a 'fiduciary obligation to act in the "best interests of its insured,"' and not its own pecuniary interest at all times." *Skaling*,

799 A.2d at 1012 (citations omitted). Plaintiffs have presented facts from which a reasonable fact finder could conclude that Travelers and St. Paul delayed issuing their coverage determinations and coordinated their respective positions in order to serve their own pecuniary interests as merging companies, not the best interests of the insured. Summary judgment as to Count II should therefore be denied.

## IV. Conclusion.

For all of the foregoing reasons, Travelers' Motion for Summary Judgment should be denied.

Respectfully Submitted,

ARMBRUST INTERNATIONAL, LTD.
and ERWIN PEARL, INC.

By Their Attorneys,

PARTRIDGE SNOW & HAHN LLP

Steven E. Snow (#1774)
Robert K. Taylor (#6514)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

DATED: October 17, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFFS' OPPOSITION TO TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT was mailed, postage prepaid, on this 17th day of October, 2005 to:

Anthony R. Zelle, Esq.
Denner O'Malley, LLP
Four Longfellow Place
35th Floor
Boston, MA 02114

John J. Flanagan, Esq.
2348 Post Road
Warwick, RI 02886

Stephen H. Burke, Esq.
Ratcliffe, Burke, Harten & Ellis LLP
1600 Financial Plaza
Providence, RI 02903

Robert J. Maselek, Jr., Esq.
Mark E. Cohen, Esq.
The McCormack Firm, LLC
One International Place
7th Floor
Boston, MA 02110

820387_1/3119-3

# Erwin Pearl, Inc.

1340 U.S. Highway One, Suite 102
Jupiter, Florida 33469

Phone: (561) 745-7078 Fax: (561) 745-8104


February 26, 2004

Ms. Fionuala M. Dullea
Claim Manager, Bond
Travelers
300 Crown Colony Drive
Quincy, MA 02169

| | | |
|---|---|---|
| Re: | Insured: | Erwin Pearl, Inc. |
| | Policy No.: | 006LB103287494BCM |
| | Claim No.: | 006FCT0304133NR |
| | Subject: | Employee theft |

Dear Ms. Dullea:

I was outraged at statements which you made during our conversation on Tuesday, February 24, 2004 with regard to the possible position which Travelers may take under the captioned policy for employee theft committed by Michelle Gardner, a former employee at the Armbrust facility in Providence, Rhode Island. To fully understand my outrage (which feeling I share with all other executives at Erwin Pearl, Inc. and Armbrust International) an understanding of the facts is essential:

1. By letter dated 5/29/03 you were furnished with a Notice of Loss and by letter dated 5/30/03 you furnished us with a Proof of Loss Form.

2. We immediately commenced, through our outside CPA, Joseph Cavallaro of the firm of Syner and Cavallaro, the arduous task of investigating the extent of the fraud and accumulating evidence of the fraud and by letter and Report dated 9/9/03, Mr. Cavallaro furnished you all of the financial information which you had requested including a schedule and copies of all checks, which were fraudulently endorsed. The fraudulently endorsed checks were all payroll checks and once we determined which checks were most likely fraudulently endorsed we had to request those checks from ADP Payroll Services which handles all payroll matters. This was both a costly and time consuming project.

deft EXHIBIT BROZOST
10
4-28-05

A 0731

3. After you received the 9/9/03 letter and Report you requested that Mr. Cavallaro furnish a copy of the Report to and have discussions with your outside forensic auditor, Jose Tarrio, of the firm of Richardson and Co., CPA's. These discussions occurred in early November, 2003 and Mr.Tarrio indicated he would meet with you to discuss his findings.

4. Although Mr.Tarrio requested a meeting with you, you delayed that meeting for several weeks.

5. After you met with the forensic accountant I called and asked when we could expect to receive payment of our loss from Travelers and you indicated that in view of the amount of the loss you would have to submit the matter to home office. At that time I expressed frustration that a submission to home office had not been considered before that time.

6. In my conversation with you on Tuesday you indicated that Travelers might take the position that it is liable for a minor portion of the loss since it is only liable for losses which occur during the period of the Travelers Policy. You further indicated that St. Paul was again addressing the issue as to its liability under the existing and prior St. Paul Policies. During that conversation you mentioned that you were delayed in responding to me since our insurance Broker, Vin Capone of The Preston Insurance Alliance had delayed furnishing you with copies of the St. Paul Insurance Policies. Mr. Capone has assured me that he responded to your request by furnishing you with the St. Paul Policies within 7 days after the request was made.

7. On Tuesday when you advised me of the limited rights we had against Travelers, I took exception and advised you that the clear language of Section VB of the Travelers Policy provides that Travelers is responsible for the total amount of the loss, irrespective of whether the loss occurred before or during the Policy Period.

Based on all of the above it is apparent that the Travelers has not dealt fairly and in good faith with its insured. I find it unconscionable that nine (9) months following your receipt of notice of loss you are first hinting at the fact that there may only be limited recovery under our policy, notwithstanding the clear language to the contrary in our policy. Please be advised that we will take such actions as we deem appropriate to enforce our rights under the Travelers Policy.

Yours Very Truly,

Michael E. Brozost

CC: Steven G. Snow, Esq.
Partridge Snow & Halen, LLP
180 South Marie Street
Providence, RI 02903

"Santor,Tracey" <TSANTOR@travelers.com>

02/05/2004 03:09 PM

To: "Duffy, Sean" <Sean.Duffy@stpaul.com>

cc: "Dullea,Fionuala" <FDULLEA@travelers.com>, "Keller Jr,Joseph M" <JMKELLER@travelers.com>

Subject: Insured: Erwin Pearl

As per my voice mail, I wanted to ask you to look into a claim that may be being handled in the PC area of St. Paul. I thought you mentioned that you guys had oversight of claims over $250,000. This one might possibly meet that criteria.

St. Paul Coverage ? policy number CK05700250

Policy inception appears to be 10/20/02 although there is another dec page with 2/10/03 as the inception date for the same policy number. Yours is a Premier Policy Protection Policy. The first inception date policy has a limit of $500,000 and the second has a limit of $25,000 coverage for employee theft on the 'additional limits' page.

We came on to the risk 3/12/03 with a $1,000,000 limit. Ours is a proprietary crime policy called the Wrap.

We received notice of a loss on 5/29/03. We received Proof of Loss on 9/17/03 which indicates a loss in excess of $300,000. The discovery date was in May 03. The embezzlement has been ongoing since May 2000. The employee was writing checks in the name of terminated or absent employees and forging their signatures to cash checks.

The insured recently received a reservation of rights letter from Christopher A. Gelinas (860) 683-3172 wherein he says the St. Paul policy is excess the Travelers' policy because our policy more specifically insures the property (?).

Can you have someone look into this and call our claim manager Fionualla Dullea in Boston at 617-984-1220.

Let me know if you want to discuss it with me.

======================================================================
======

This communication, together with any attachments hereto or links contained herein, is intended for the use of the intended recipient(s) only and may contain information that is confidential or legally protected. If you are not the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of this

425 1 nov1703_425.htm

Filed by The St. Paul Companies, Inc.
Pursuant to Rule 425 Under the
Securities Act of 1933 and deemed
filed pursuant to Rule 14a-12
under the Securities Exchange Act of 1934

Subject Company: Travelers Property Casualty Corp.
Commission File No.: 1-31266

The following joint press release was issued by The St. Paul Companies, Inc. and Travelers Property Casualty Corp. on November 17, 2003:

**FOR IMMEDIATE RELEASE**

## THE ST. PAUL COMPANIES AND TRAVELERS PROPERTY CASUALTY TO MERGE, CREATING SECOND LARGEST COMMERCIAL INSURER

***Combined Company Will Be a Leading Provider Of Commercial and Personal Property Casualty Insurance Distributed Through Independent Agents And Brokers***

***Merger Of Equals Enhances Growth Opportunities***

***Combined Company Will Have Total Shareholders' Equity of $20 Billion***

**SAINT PAUL, Minn. and HARTFORD, Conn. (November 17, 2003)** – The St. Paul Companies, Inc. (NYSE: SPC) and Travelers Property Casualty Corp. (NYSE: TAP.A and TAP.B) today announced that they have signed a definitive merger agreement that will create the nation's second largest commercial insurer, to be known as The St. Paul Travelers Companies. The combined company will be a leading provider of property casualty insurance products distributed through independent agents and brokers and one of the largest financial services companies in the United States. It is expected to have total assets of $107 billion, shareholders' equity of $20 billion, total capital of $26 billion and net written premiums of $20 billion. With unparalleled product breadth and geographic reach, the combined entity will be uniquely positioned as the property casualty insurer of choice for agents, brokers and customers across the United States.

The Board of Directors of each company has unanimously agreed to the tax-free, stock-for-stock merger. Under the terms of the merger agreement, holders of Travelers Class A and Class B common stock will each receive 0.4334 St. Paul common shares for each Travelers share. The combined company is expected to pay dividends at the annual rate of $0.88 per share. In addition, The St. Paul expects to pay a special dividend to its shareholders prior to the closing, so that in 2004, shareholders of The St. Paul will receive dividends amounting to The St. Paul's current indicated annual rate of $1.16 per share. The transaction is subject to customary closing conditions, including the approval by the shareholders of both companies as well as certain regulatory approvals. The transaction is expected to close in the second quarter of 2004.

---

The St. Paul Travelers Companies will remain a Minnesota corporation and will have its corporate headquarters in Saint Paul, Minnesota. The specialty insurance lines, which will be known as St. Paul Specialty, will be based in Saint Paul. The

St. Paul's international business will continue to be based in London. The combined company's commercial lines and personal lines business will be consolidated under the Travelers brand and based in Hartford, Connecticut. The company will also continue to own The St. Paul's nearly 80 percent interest in Nuveen Investments, an asset management company serving affluent and high net worth investors.

Jay S. Fishman, 51, chairman and chief executive officer of The St. Paul, will serve as chief executive officer of the combined company, reporting to the new Board of Directors. Robert I. Lipp, 65, chairman and chief executive officer of Travelers, will serve as the company's executive chairman until January 1, 2006, at which time it is anticipated that Mr. Fishman will become chairman as well as chief executive officer. The new Board of Directors will consist of all current outside directors of both companies as well as Mr. Lipp and Mr. Fishman, resulting in a total of 12 directors from Travelers and 11 from The St. Paul.

Mr. Fishman said, "This transaction represents a unique and compelling opportunity to create one of the nation's largest and strongest property and casualty insurers, with enhanced prospects for strong and consistent earnings growth. At a time of industry consolidation, we are putting together two outstanding companies with excellent brands and reputations, and similar operating discipline and underwriting skills, to create a significantly larger and more diversified enterprise with a greater ability to assume and manage risk.

"From a financial standpoint," Mr. Fishman continued, "I expect the transaction to enhance growth opportunities and enable the combined company to benefit from improved efficiencies and economies of scale."

Mr. Lipp said, "We are very excited about the combination of these two financially strong industry leaders. This transaction brings together two companies with similar performance-based cultures and highly complementary product offerings and geographic reach. With efficient operations, a sound balance sheet, superior technology and a strong national distribution network, the combined company will be well positioned for the long-term in an environment that favors stability and strength."

The combined company will have a leading position in national accounts, which is a traditional strength of Travelers, and in the highly attractive middle market and small commercial agency businesses. The combination will also benefit from The St. Paul's expertise and focus in specialty lines. The company will rank #2 in domestic commercial lines, #2 in agent distributed personal lines, #5 overall among domestic property and casualty companies, and will be one of the top three commercial insurers in 42 states and the District of Columbia, according to direct written premium data compiled by AM Best.

Mr. Lipp continued, "Jay and I look forward to working very closely with the seasoned and talented management teams at The St. Paul and Travelers, to see that the combined company achieves its full potential. I am particularly eager to collaborate with Jay on strategic issues once the companies are combined, as we map out a long-term strategy to further solidify the company's position as a leading agency-based insurer."

The companies also announced today that Charles J. Clarke, president of Travelers, will become vice chairman of The St. Paul Travelers Companies. Douglas G. Elliot, currently chief operating officer of Travelers, will become chief executive officer of the combined general commercial and personal lines businesses. T. Michael Miller, executive vice president and chief executive officer of Specialty Commercial at The St. Paul, will become chief executive officer of the combined



specialty insurance operations. Marita Zuraitis, chief executive officer of The St. Paul's commercial insurance operations, will become executive vice president of the combined company, initially focused on the integration process. She will also work with Mr. Fishman on operational strategy. Brian MacLean, executive vice president of claim at Travelers and Timothy M. Yessman, chief executive officer of claim at The St. Paul, will both become executive vice presidents in the combined claim operation. John A. MacColl, currently vice chairman of The St. Paul, will continue as a vice chairman of the combined company.

As a result of the combination, The St. Paul Travelers Companies, its shareholders, employees, agents, and customers should benefit from its:

- Considerable financial strength.
- Depth and breadth of product offerings.
- Strong distribution presence with enhanced geographic coverage across the U.S.
- Experienced and well-regarded management team.
- Successful track record in integrating businesses.
- Enhanced growth opportunities, with greater diversity and stability of earnings.
- Greater efficiencies and economies of scale.

**Strong Commitments To Saint Paul and Hartford**

"We are committed to maintaining a strong presence in both Saint Paul and Hartford, where the two companies have long played meaningful financial, civic and philanthropic roles in their respective home cities," Mr. Fishman and Mr. Lipp said. "We are confident that this transaction will yield tangible benefits to both communities. Saint Paul will serve as the corporate headquarters of our significantly larger and stronger financial services company and also will be home to our specialty lines business. At the same time, Hartford will be the base of operations for our commercial lines and personal lines businesses."

Travelers was advised by Citigroup Global Markets and Lehman Brothers. Simpson Thacher & Bartlett LLP acted as Travelers' legal counsel. The St. Paul was advised in the transaction by Goldman Sachs and Merrill Lynch. Davis Polk & Wardwell acted as legal counsel for The St. Paul.

###

**Webcast: http://travelers.com/investor/ or http://stpaul.com**

The managements of The St. Paul and Travelers will discuss the proposed merger via webcast at 9 a.m. (EDT) today. Following the live event, an audio playback of the webcast will be available and the slide presentation will be archived at the web sites noted above. To listen to the webcast or the playback, click on one of the links above.

**About The St. Paul Companies**

The St. Paul Companies is headquartered in Saint Paul, Minnesota, and provides commercial property-liability insurance and asset management services. The St. Paul reported 2002 revenue from continuing operations of $8.92 billion and total assets of $39.96 billion, and ranks No. 207 on the 2002 *Fortune* 500 list of largest U.S. companies. For additional information about The St. Paul's quarterly results, go to the Investor Relations section of The St. Paul's web site: www.stpaul.com.



**About Travelers Property Casualty Corp.**

Travelers Property Casualty Corp. (NYSE: TAP.A. and TAP.B) is a leading provider of a wide range of insurance products. The Company is the second largest writer of homeowners and auto insurance through independent agents. Travelers is the third largest commercial lines insurer, providing a broad range of insurance products including workers' compensation, integrated disability, property, liability, specialty lines, surety bonds, inland/ocean marine, and boiler and machinery. For more information on Travelers products, see www.travelers.com.

**CONTACTS:**

***For The St. Paul Companies***

Media: Shane Boyd

651.310.3846
shane.boyd@stpaul.com

Investors: Laura Gagnon
651.310.7696
laura.gagnon@stpaul.com

***For Travelers Property Casualty Corp.***

Media: Keith Anderson
860.954.6390

Institutional Investors: Maria Olivo
860.277.8330

Individual Investors: Marc Parr
860.277.0779

This release contains certain forward-looking information about Travelers Property Casualty Corp. ("Travelers"), The St. Paul Companies, Inc. ("The St. Paul") and the combined company after completion of the transactions that are intended to be covered by the safe harbor for "forward-looking statements" provided by the Private Securities Litigation Reform Act of 1995. Forward-looking statements are statements that are not historical facts. Words such as "expect", "feel", "believe", "will", "may", "anticipate", "plan", "estimate", "intend", "should" and similar expressions are intended to identify forward-looking statements. These statements include, but are not limited to, financial projections and estimates and their underlying assumptions; statements regarding plans, objectives and expectations with respect to future operations, products and services; and statements regarding future performance. Such statements are subject to certain risks and uncertainties, many of which are difficult to predict and generally beyond the control of Travelers and The St. Paul, that could cause actual results to differ materially from those expressed in, or implied or projected by, the forward-looking information and statements.

Some other risks and uncertainties include, but are not limited to: those discussed and identified in public filings with the Securities and Exchange Commission (the "SEC") made by Travelers and



---

The St. Paul; the inability to obtain price increases due to competition or otherwise; losses due to foreign currency exchange rate fluctuations and losses in investment portfolios, which could be adversely impacted by adverse developments in U.S. and global financial markets, interest rates and rates of inflation; weakening U.S. and global economic conditions; insufficiency of, or changes in, loss reserves; the occurrence of catastrophic events, both natural and man-made, including terrorist acts, with a severity or frequency exceeding our expectations; exposure to, and adverse developments involving, environmental claims and related litigation; the impact of claims related to exposure to potentially harmful products or substances, including, but not limited to, lead paint, silica and other potentially harmful substances; adverse changes in loss cost trends, including inflationary pressures in medical costs and auto and home repair costs; developments relating to coverage and liability for mold claims; the effects of corporate bankruptcies on surety bond claims; adverse developments in the cost, availability and/or ability to collect reinsurance; the ability of our subsidiaries to pay dividends to us; adverse outcomes in legal proceedings; judicial expansion of policy coverage and the impact of new theories of liability; the impact of legislative actions, including federal and state legislation related to asbestos liability reform; larger than expected assessments for guaranty funds and mandatory pooling arrangements; a downgrade in claims-paying and financial strength ratings; the loss or significant restriction on the ability to use credit scoring in the pricing and underwriting of policies;

amendments and changes to the risk-based capital requirements; the ability to achieve the cost savings and synergies contemplated by the proposed merger; the effect of regulatory conditions, if any, imposed by regulatory agencies; the reaction of Travelers' and The St. Paul's customers and policyholders to the transaction; the ability to promptly and effectively integrate the businesses of Travelers and The St. Paul; and diversion of management time on merger-related issues.

Readers are cautioned not to place undue reliance on these forward-looking statements which speak only as of the date hereof. Neither Travelers nor The St. Paul undertakes any obligation to republish revised forward-looking statements to reflect events or circumstances after the date hereof or to reflect the occurrence of unanticipated events. Readers are also urged to carefully review and consider the various disclosures in Travelers' and The St. Paul's various SEC reports, including but not limited to Annual Reports on Form 10-K for the year ended December 31, 2002 and Quarterly Reports on Form 10-Q for the reporting periods of 2003.

###



---

**ADDITIONAL INFORMATION**

This filing may be deemed to be solicitation material in respect of the proposed merger of Travelers and The St. Paul. In connection with the proposed transaction, a registration statement on Form S-4 will be filed with the SEC. SHAREHOLDERS OF TRAVELERS AND SHAREHOLDERS OF THE ST. PAUL ARE ENCOURAGED TO READ THE REGISTRATION STATEMENT AND ANY OTHER RELEVANT DOCUMENTS FILED WITH THE SEC, INCLUDING THE JOINT PROXY STATEMENT/PROSPECTUS THAT WILL BE PART OF THE REGISTRATION STATEMENT, BECAUSE THEY WILL CONTAIN IMPORTANT INFORMATION ABOUT THE PROPOSED MERGER. The final joint proxy statement/prospectus will be mailed to shareholders of Travelers and shareholders of The St. Paul. Investors and security holders will be able to obtain the documents free of charge at the SEC's website, www.sec.gov, from Travelers Property Casualty Corp., One Tower Square, Hartford, Connecticut 06183, Attention: Investor Relations, or from The St. Paul Companies, Inc., 385 Washington Street, Saint Paul, Minnesota 55102, Attention: Investor Relations.

**INFORMATION REGARDING PARTICIPANTS**

Travelers, The St. Paul and their respective directors and executive officers and other members of management and employees may be deemed to participate in the solicitation of proxies in respect of the proposed transactions. Information regarding Travelers' directors and executive officers is available in Travelers' proxy statement for its 2003 annual meeting of shareholders, which was filed with the SEC on March 17, 2003, and information regarding The St. Paul's directors and executive officers is available in The St. Paul's proxy statement for its 2003 annual meeting of shareholders, which was filed on March 28, 2003, as supplemented by the Additional Materials filed pursuant to Schedule 14A of the Securities Exchange Act of 1934, as amended, on April 7, 2003. Additional information regarding the interests of such potential participants will be included in the joint proxy statement/prospectus and the other relevant documents filed with the SEC when they become available.