# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

ARMBRUST INTERNATIONAL, LTD.
AND
ERWIN PEARL, INC.,
Plaintiffs

v.

TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA
AND
ST. PAUL FIRE & MARINE INSURANCE COMPANY,
Defendants

CIVIL ACTION NO.:

CA 04 212 ML

# REPLY OF TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA TO PLAINTIFFS' OPPOSITION TO TRAVELERS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Defendant, Travelers Casualty & Surety Company of America ("Travelers"), submits this reply to the Opposition of Plaintiffs, Armbrust International, Ltd. and Erwin Pearl, Inc. (collectively "Erwin Pearl"), to Travelers' Motion for Summary Judgment.

## II. ARGUMENT

### A. The Travelers Policy Only Applies to Embezzlements That Took Place While the Policy Was in Effect

In its Opposition, Erwin Pearl again argues that this case is controlled by C.P. Int'l Inc. v. Northbrook Excess & Surplus Ins. Co., 668 A.2d 647 (R.I. 1995). As explained in Travelers' original summary judgment memoranda, however, that case does not apply because the policy at issue in C.P. Int'l was a third party general liability policy covering property damage caused by an occurrence, while the Travelers policy at issue here is a first party crime policy that applies on a loss sustained basis. All of the cases construing crime policies that use the same language as the

Travelers policy have reached the same conclusion–the covered loss occurs when the embezzlement takes place, not when it is discovered. Erwin Pearl claims that it is of some significance that the Travelers policy covers loss of "money, security and other property resulting from employee theft." However, that language does not mean that the Travelers policy is a third party policy for property damage caused by an occurrence. Instead, the Travelers policy only provides first party coverage for intangible economic losses, whether such losses are caused by the theft of money (as is the case here) or other property.

Nor, given the different types of policies involved,[1] is it of any significance that St. Paul and Travelers have taken differing positions as to the trigger of coverage under their respective policies. In any event, all that is relevant to Travelers' motion for summary judgment is the language of the Travelers policy–not the language of the St. Paul policy or the positions that St. Paul and Erwin Pearl have taken with respect to the trigger of coverage under the St. Paul policy.[2]

### B. The Loss Sustained During Prior Insurance Provision in the Travelers Wrap Policy Does Not Apply to the Gardner Embezzlement

Moreover, the Loss Sustained During Prior Insurance Provision in the Travelers Wrap Policy is inapplicable to the Gardner embezzlement. Contrary to Erwin Pearl's arguments, and as explained in Travelers' prior summary judgment memoranda, this provision does not apply because, among other reasons, the Travelers policy did not become effective at the same time as the termination or cancellation of the St. Paul policy. Indeed, the St. Paul policy was not cancelled or terminated until long after the Travelers fidelity coverage was issued and the loss was discovered. A reduction of the limits of liability of a policy is not the same as the termination of a policy.

---

[1] The St. Paul policy is a first party property damage policy, with additional coverage for employee dishonesty; the Travelers' policy includes first party crime coverage, in addition to various other types of coverages.

[2] Strangely, in arguing that there is coverage under the Travelers policy, Erwin Pearl has claimed that Travelers and St. Paul have taken differing positions with respect to coverage. Yet, in asserting that Travelers acted in bad faith, Erwin Pearl is taking the position that Travelers and St. Paul somehow conspired to take coordinated coverage positions.

Even if the reduction in the limits of liability of liability of a policy could somehow be construed to constitute the cancellation or termination of that policy, it is undisputed that the St. Paul limits of liability were not reduced from $500,000 to $25,000 at the same time the Travelers' policy took effect.

Erwin Pearl claims that, pursuant to Rhode Island Insurance Regulation §38(5), the $500,000 St. Paul employee dishonest coverage limit remained in place until replacement coverage was obtained. Regulation 38(5), however, actually provides that:

> An insurer shall provide to the first-named insured at the mailing address shown on the policy, or to the agent of record, written notice of premium increase, change in deductible, reduction in limits or coverage at least thirty (30) days prior to the expiration date of the policy, in the case of notice to the insured or forty-five (45) days in the case of notice to the agent of record. **If the insurer fails to provide such notice, the coverage provided to the named insured shall remain in effect until notice is provided or until the effective date of replacement coverage obtained by the named insured, whichever first occurs. For the purposes of this Regulation, notice is considered given thirty (30) days following date of giving of the notice. . . .** (emphasis added).

It is not disputed that on or about November 26, 2002, at the latest, notice was provided by St. Paul to Erwin Pearl, that it would not offer $500,000 in employee theft coverage (see Plaintiff's Rule 12.1 Statement, ¶ 22). Thus, since "notice is considered given thirty (30) days following date of giving of the notice," even assuming that Regulation 38(5) is applicable to this matter, the St. Paul $500,000 coverage limits only would have been effective until December 26, 2002 at the latest. Moreover, according to Erwin Pearl, an endorsement to the St. Paul 2002-2003 policy reduced the $500,000 coverage limit effective February 10, 2003 (see Plaintiff's Rule 12.1 Statement, ¶ 52). The Travelers employee dishonesty coverage did not become effective until February 25, 2003.[3]

---

[3] As explained in Travelers' original summary judgment pleadings, the Loss Sustained During Prior Insurance provision also does not apply because, the reason why the embezzlements that occurred while the St. Paul 2002-2003 policy was in effect are not covered under that policy, was not because the time for giving notice under that policy had expired.

**C. Erwin Pearl's estoppel argument is meritless**

In its Reply Brief, Erwin Pearl argues that, "Erwin Pearl relied to its detriment on . . . [the representation by Preston that Travelers was providing employee dishonesty coverage in "excess of" the St. Paul policy], reasonably believing that the coverage from Travelers replaced the coverage up to $500,000 that it previously had from St. Paul." Erwin Pearl has yet to set forth in any detail how or why Travelers should be estopped from asserting its coverage defenses in this matter.

Contrary to Erwin Pearl's argument, Travelers does not "disown" its agency relationship with The Preston Agency, which it is undisputed was an independent agent and not a captive agent of Travelers. Although The Preston Agency had authority to "solicit, bind, execute and service [Travelers'] policies and endorsements, subject to applicable underwriting standards and rules," (see Plaintiff's Rule 12.1 Statement, ¶ 7), Travelers is not responsible for advice that The Preston Agency provided to its client, Erwin Pearl, about what types of insurance to obtain. Erwin Pearl itself cites the controlling principle:

> In his capacity as adviser, distributing the risk and determining the appropriate amount of coverage to obtain from any of the companies among whom the risk might be distributed, [an independent agent] is acting as agent of the [insured] rather than of any of the carriers. Once [the independent agent] decided to issue a policy, he was, of course, Atlantic's authorized agent in issuing the policy for the amount stated, but not in the initial determination of fixing that amount.

Etheridge v. Atlantic Mut. Ins. Co., 480 A.2d 1341, 1346 (R.I.1984).[4]

[4] AAA Pool Service v. Aetna Cas. & Sur. Co., 479 A2d 112 (R.I. 1984), which Erwin Pearl cites to support its position on the agency issue, is not on point. There is no indication in that opinion that Mr. Capone was acting as an independent agent, indeed, the term, "independent agent," does not appear anywhere in that opinion. Moreover, the alleged wrongful act of Mr. Capone in that case did not involve advice given to an insured about what insurance to purchase, but instead involved an allegedly defamatory statement that Mr. Capone made in connection with his handling of a claim on behalf of the carrier.

Erwin Pearl also misstates the holding of General Accident Ins. Co., v. American Nat'l Fireproofing, Inc., 716 A.2d 751, 756-57 (R.I. 1998). In that case, the court held that an independent agent is the agent of the insured to the extent that it procures insurance for the insured; in issuing a certificate of insurance evidencing coverage, however, the independent agent was an agent of the carrier.

As best Travelers can tell from the brief argument that Erwin Pearl has made as to estoppel, Erwin Pearl claims Travelers is estopped from declining coverage because The Preston Agency purportedly should have ensured that no gaps in coverage existed and the Travelers employee theft coverage was in all respects "equivalent" to the St. Paul coverage. This alleged wrongdoing of The Preston Agency, however, falls squarely within Preston's role as, "adviser [to Erwin Pearl in] distributing the risk and determining the appropriate amount of coverage to obtain from any of the companies among whom the risk might be distributed." The simple fact is that Erwin Pearl has not and cannot claim that the policy that Travelers actually issued was not the policy that The Preston Agency, on behalf of Erwin Pearl, bargained for, or that Travelers agreed to issue to issue to Erwin Pearl. It was not the responsibility of Travelers to confirm that the coverage reflected in the Travelers policy was in all respects "equivalent" to the St. Paul policy and that there would not be a gap in coverage in Erwin Pearl's employee dishonesty coverage. If, as Erwin Pearl evidently claims, The Preston Agency was negligent in advising Erwin Pearl about what coverage to purchase, Erwin Pearl's remedy is to bring a claim against The Preston Agency, not Travelers.

**WHEREFORE**, Defendant, Travelers, requests that the Court deny Erwin Pearl's Motion for Partial Summary Judgment and allow Travelers' Motion for Summary Judgment.

Respectfully submitted,

**Dated:** 11/1/05

**Travelers Casualty & Surety Company of America**, Defendant,

By: [signature]

John J. Flanagan [RI Bar #3099]
2348 Post Road
Warwick, RI 02886
(401) 732-4480/(508) 541-6050 (fax)

**CO-COUNSEL**,

[signature]

Mark E. Cohen, Esq. [MA BBO # 089800]
Robert J. Maselek, Jr. [MA BBO#564690]
**The McCormack Firm, LLC**
One International Place - 7th Floor
Boston, MA 02110
Tel: (617) 951-2929
Fax: (617) 951-2672

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Reply of Travelers Casualty & Surety Company of America to Plaintiffs' Opposition to Travelers' Motion for Summary Judgment*, was served upon all counsel of record, by regular mail, this 1st day of November, 2005, by mailing a copy hereof, addressed to:

Robert K. Taylor, Esq.
**Partridge Snow & Hahn LLP**
180 South Main Street
Providence, RI 02903-7120

Stephen H. Burke, Esq
**Ratcliffe Burke Harten & Elias, LLP**
1600 Financial Plaza
Providence, RI 02903

Anthony R. Zelle
**Denner O'Malley LLP**
Four Longfellow Place, 35th Floor
Boston, MA 02114

**Dated:** 11/1/05

Robert J. Maselek, Jr.

#78587v1<MEBOS> -Pearl v Travelers Reply Brief